IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DEBORAH (DC) C. BROIL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 24-2029-DDC-RES |
| | ) |
| **STATE OF KANSAS, KANSAS BUREAU** | ) |
| **OF INVESTIGATION AND ITS** | ) |
| **REPRESENTATIVES,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## DEFENDANT'S MOTION TO DISMISS

Defendant Kansas Bureau of Investigation (KBI) ("Defendant"), respectfully requests that this Court dismiss the claims against it under Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendant states the following in support.

### NATURE OF THE CASE

Plaintiff Deborah (DC) C. Broil, a former employee of the Kansas Bureau of Investigation (KBI), alleges that the termination of her employment with the KBI on December 5, 2022, constitutes race, ancestry, and color discrimination, sex discrimination, age discrimination, and retaliation based on an administrative complaint process she started on May 5, 2022. (Doc. 1 at 1, ¶ 5.) She also alleges that racial harassment, sexual harassment, and retaliatory harassment resulted in a hostile work environment. (Doc. 1 at 1.)

Plaintiff filed this lawsuit on January 22, 2024. (Doc. 1.) She brings claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), the Kansas Age Discrimination in Employment Act (KADEA), and § 1983 (alleging equal protection and due-process violations). (Doc. 1 at 10-17.) The remedies she seeks vary based on the type of claim. For her Title VII and ADEA claims, Plaintiff seeks "actual and punitive

damages," costs and fees, interest, and "appropriate equitable relief." (Doc. 1 at 11-14, 16.) For her KADEA claim, she seeks back pay with interest, front pay, "liquidated damages," and costs and fees. (Doc. 1 at 17.) For her § 1983 claim, she seeks "actual, compensatory, and punitive damages," interest, and unspecified "injunctive relief." (Doc. 1 at 17.)

Defendant now brings this Motion to Dismiss. The Court should dismiss the ADEA and § 1983 claims (Counts IV and VI, respectively) as well as Plaintiff's punitive-damages claims under Title VII (in Counts I, II and III) for lack of subject-matter jurisdiction due to Eleventh Amendment immunity. The Court should dismiss Counts II ("Sex Discrimination and Harassment") and I ("Race, Ancestry, and Color Discrimination and Harassment") under Title VII for failure to state a claim due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment. The Court should dismiss Count III ("Retaliation and Retaliatory Hostile Work Environment") under Title VII for failure to state a claim due to lack of causation. Lastly, the Court should decline to exercise supplemental jurisdiction over the KADEA claim (Count V) or, in the alternative, dismiss it for failure to state a claim.

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

*Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, although a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court need not accept as true those allegations that state only legal conclusions. *Id.* Under this standard, a plaintiff's claim must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

**I.   The Eleventh Amendment bars Plaintiff's ADEA and § 1983 claims against Defendant as well as claims punitive damages under Title VII.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This immunity extends to arms of the state." *Id.* Because of the presumption that statutes do not abrogate this immunity, state agencies do not even count as "persons" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-67, 71 & n.10 (1989).

Three exceptions exist to this immunity: (1) "a state may consent to suit in federal court"; (2) "Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts

under Section 5 of the Fourteenth Amendment"; and (3) under the *Ex Parte Young* exception, a plaintiff may seek *prospective* relief against a state *official* for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123 (1908)). But even under *Ex Parte Young*, the Eleventh Amendment still bars "claims for back pay, monetary damages, and retrospective declaratory relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, Plaintiff has sued the state of Kansas by suing a state agency. Kansas has not consented to suit in federal court regarding any of the claims in this case. Congress has abrogated the state's immunity only with regard to the Title VII claims. *Gaylord v. Kansas*, No. 23-3075, 2024 WL 358240, at *2 (10th Cir. Jan. 31, 2024) (citing *Crumpacker v. Kan. Dep't of Hum. Res.*, 338 F.3d 1163, 1169 (10th Cir. 2003)) ("Congress abrogated sovereign immunity for Title VII claims"). But "federal law does not permit the recovery of punitive damages on Title VII claims against state governments." *Duckett v. Water Dist. One of Johnson Cnty.*, No. 07-2376-JAR, 2009 WL 10708342, at *17 n.85 (D. Kan. Feb. 26, 2009) (citing 42 U.S.C. § 1981a(b)(1)). Therefore, Title VII does *not* abrogate a state's immunity for purposes of punitive damages. Here, Plaintiff seeks punitive damages under Title VII against Defendant (in Counts I, II, and III), but Defendant is a state-government entity. So this request for punitive damages is barred by the Eleventh Amendment.[1]

---

[1] This request for punitive damages is also outside the court's subject-matter jurisdiction due to lack of constitutional standing because of lack of redressability when the Court cannot provide the relief requested. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 ("a plaintiff must demonstrate standing separately for each form of relief sought"), 180-81 (standing requires redressability) (2000).

Although the Age Discrimination in Employment Act of 1967 (ADEA) purports to abrogate Eleventh Amendment immunity, the Supreme Court has found that "purported abrogation" to be "invalid" because it was "not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Accordingly, "Kansas is immune from discrimination suits under the ADEA because Congress has not abrogated Eleventh Amendment immunity from ADEA claims and Kansas has not voluntarily waived its Eleventh Amendment immunity." *Allen v. Knowlton*, No. 22-4049-EFM, 2023 WL 3496237, *2 n.11 (D. Kan. May 17, 2023) (quoting *Overfield v. Kansas*, No. 21-4093-JWB, 2022 WL 2072723, *3 (D. Kan. June 9, 2022)), *aff'd*, 2024 WL 621279, at *2 (10th Cir. Feb. 14, 2024).

For Plaintiff's ADEA and § 1983 claims (Counts IV and VI), the state's immunity has not been abrogated by Congress. For the ADEA claim, Plaintiff requests monetary damages and "appropriate equitable relief." (Doc. 1 at 16.) For the § 1983 claim, Plaintiff requests monetary damages and unspecified "injunctive relief." (Doc. 1 at 17.) Even if Plaintiff's vague requests for "appropriate equitable relief" and "injunctive relief" were liberally held to request a kind of recognizable prospective relief, the Defendant is a state *agency*, not a state *official*, so the *Ex Parte Young* exception still would not apply. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). And Plaintiff's claims for monetary damages (and any equitable claims for back pay or retrospective declaratory relief) under the ADEA and § 1983 are barred by the Eleventh Amendment. *See Meiners*, 359 F.3d at 1232. Therefore, Plaintiff's ADEA and § 1983 claims (Counts IV and VI) as well as Plaintiff's punitive-damages claims under Title VII (in Counts I, II and III) against Defendant should be dismissed for lack of subject-matter jurisdiction due to

5

Eleventh Amendment immunity.

## II. Plaintiff's sex-discrimination-and-harassment claim fails to state a claim due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment.

### A. Plaintiff fails to allege facts plausibly suggesting intentional discrimination on the basis of sex.

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). To survive a motion to dismiss, although a plaintiff need not allege facts with quite the specificity needed to "establish" the evidentiary standard of the *McDonnell Douglas* prima facie case, the plaintiff still "needs to allege facts that, if true, plausibly allow a factfinder to conclude that the [defendant] violated Title VII." *Fuller v. Kan. Dep't of Child. & Fams.*, No. 16-2415-DDC, 2018 WL 4361187, at *4 (D. Kan. Sept. 13, 2018) (citing *Khalik*, 671 F.3d at 1193). To plausibly allege intentional discrimination, a plaintiff must allege facts that, if true, plausibly allow a factfinder to conclude that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *See Khalik*, 671 F.3d at 1192.

Accordingly, in the *Khalik* case, it was not sufficient to establish discrimination that Plaintiff was a member of protected classes (Arab-American, born in Kuwait, and Muslim), performed her job well, was grabbed by the arm in the office, and her employment was terminated. *Khalik*, 671 F.3d at 1193-94. Looking at the complaint, the court reasoned that:

> There are no allegations of similarly situated employees who were treated differently. There are no facts relating to the alleged discrimination. . . . Indeed, there is nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory . . . motive.

6

> While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. . . . She should know details about how Defendant treated her compared to other non-Arabic or non-Muslim employees. She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual. She should know who grabbed her by the arm, what the context for that action was, and when it occurred. She should know why she believed that action was connected with discriminatory animus. . . . But in fact, Plaintiff offers none of this detail. To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include some further detail for a claim to be plausible. Plaintiff's claims are based solely on the fact that she is Muslim and Arab–American . . . and that Defendant terminated her. Without more, her claims are not plausible under the *Twombly/Iqbal* standard.

*Id.* at 1194.

Here, as in *Khalik*, Plaintiff's claims of intentional discrimination on the basis of sex are based solely on the fact that she is female and that Defendant terminated her employment. No alleged facts provide any plausible reason to believe that she was terminated on the basis of her sex. She has not alleged any facts tending to show that she was treated less favorably than any male employees. Not only that, but in the only place in the Complaint where she asserts that specific people were treated better than her, those people were of the same sex. (*See* Doc. 1 at ¶ 14.) She has not alleged any facts otherwise tending to make it objectively plausible that she was terminated on the basis of her sex. Therefore, Plaintiff has failed to plausibly state a claim of intentional discrimination on the basis of sex.

### B. Plaintiff's viewing of an objectionable movie was an isolated incident that does not constitute actionable sexual harassment under Title VII.

"[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). "[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively

7

offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Breeden*, 532 U.S. at 271.

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. [citation omitted] Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.

*Faragher*, 524 U.S. at 788.

"The Supreme Court and the Tenth Circuit have stated that courts should filter cases involving isolated incidents unless the isolated incident is extremely serious." *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1243 (D. Kan. 2005) (citing *Faragher*, 524 U.S. at 788). Accordingly, this Court has previously ruled that "an isolated incident, the viewing of a movie that contained a scene involving sexual activity" fell "far short" of this standard and failed to state a claim for purposes of a motion to dismiss. *Id.* In that case, the plaintiff was a custodian cleaning the room where the movie was playing. *Id.* at 1237-38.

In addition, an employer can only be held "directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior," which occurs "if the employer knew or reasonably should have known about the harassment but failed to take remedial action." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

Here, Plaintiff alleges an isolated incident where a DVD movie that "contained sexual scenes that were offensive to" her was left on her desk with a note signed by one of her co-workers. (Doc. 1 at ¶ 16.) This is "an isolated incident" like in the *Dockery* case, which also involved "the viewing of a movie that contained a scene involving sexual activity." *See Dockery*,

8

382 F. Supp. 2d at 1243. Further, Plaintiff's claim is even less strong than in the *Dockery* case because she does not allege that she even viewed the scenes that were offensive to her. If she did, then she would had to have chosen to initiate the playing of the movie herself. She does not allege that it was already playing in a room at work, that she was directed by supervisors to watch it, or that she was forced to watch the movie through any other circumstances.

What is more, the alleged bad actor was a mere co-worker. Plaintiff does not allege that the alleged bad actor was a supervisor. Plaintiff alleges that she reported the offensive movie to a supervisor (Doc. 1 at ¶ 16), but she does not allege circumstances sufficient that a supervisor should have reasonably been expected to take remedial action. Federal law does not require disciplinary action simply because one employee discovers they have different preferences in movies than another employee. Plaintiff has failed to allege facts to make it plausible that Defendant should be held vicariously liable for the acts of Plaintiff's co-worker.

In addition, Plaintiff failed to exhaust administrative remedies with respect to this claim. Plaintiff alleges that the DVD was left on her desk early in May 2021. (Doc. 1 at ¶ 16.) She first filed a Charge of Discrimination on May 5, 2022, more than 300 days thereafter. (Doc. 1 at ¶ 5.)

A Charge of Discrimination must be filed within 180 or 300 days after the alleged unlawful employment practice occurred. 42 U.S.C.A. § 2000e-5(e)(1). Because this claim was not filed with EEOC or KHRC within the statutory time, Plaintiff failed to exhaust administrative remedies with respect to this claim, and it should be dismissed.

Plaintiff does not allege any other facts that could be even liberally construed as potentially relating to sexual harassment. Therefore, for these reasons and the reasons in section II(A) above, Plaintiff's claim for "sex discrimination and harassment" (Count II) should be dismissed for failure to state a claim.

**III.  Plaintiff's discrimination-and-harassment claim based on race, ancestry, and color fails to state a claim due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment.**

 **A.  Plaintiff fails to allege facts plausibly suggesting intentional discrimination on the basis of race, ancestry, or color.**

The same pleading standard applies to claims of intentional racial, ancestry, or color discrimination under Title VII as to claims of intentional sex discrimination under Title VII. *See* section II(A) above; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192-94 (10th Cir. 2012). So Plaintiff is required to plausibly allege intentional discrimination by alleging facts that, if true, plausibly allow a factfinder to conclude that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192.

In *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 932-36 (10th Cir. 2015), the Tenth Circuit held that a female surgeon failed to plead a plausible claim of intentional discrimination when she failed to allege she was similarly situated to certain male surgeons "in all *material* respects" (emphasis in original), even though those male surgeons received different employment benefits than her. *See also id.* 933 & n.5 (applying same standard as under Title VII). The male surgeons had been hired as part of a multi-million-dollar acquisition of their established practice along with its building and equipment. The plaintiff's level of "education and skill," the Tenth Circuit held, "did not offer anything approaching the level of assets, staff, building, patient base, equipment, or years of building a local and regional reputation as had the [other] surgeons." *Id.* at 935. Therefore, she was not similarly situated to those male surgeons.

In *Fuller v. Kan. Dep't of Child. & Fams.*, No. 16-2415-DDC, 2018 WL 4361187, at *5 (D. Kan. Sept. 13, 2018), this Court held that a plaintiff of a minority race plausibly alleged a claim of intentional discrimination when she alleged that her employment was terminated for

10

"subpar work performance" yet the employer did not terminate the employment of "lower performing employees" (who were presumed white since most of the employees were white). *Id.* at \*2, \*5. Unlike in *Morman*, the plaintiff in *Fuller* met and exceeded the standard to be considered substantially similar to the persons whose treatment was being compared to hers.

When the adverse employment action is based on a policy or rule, the prima facie case includes showing that similarly situated employees outside the protected class who violated the same rule were treated differently. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988). "Discriminatory treatment may be shown by gross statistical disparities and specific instances of individual discrimination." *Id.* The *McAlester* case, although an appeal from a jury verdict, still demonstrates the necessary elements of a prima facie case, which shines light on what the plaintiff must plausibly allege at the pleading stage. In *McAlester*, the plaintiff provided specific instances of white employees and non-white employees violating "similar rules" yet the "minorities were terminated on their first offense," while white employees were not. *Id.* at 1257. These specific instances of individual discrimination (along with statistical evidence) showed a prima facie case of intentional race discrimination. *Id.* at 1260.

Here, Plaintiff alleges that the reason she was provided for why her employment was terminated was that she did not complete a training program in a timely manner. (Doc. 1 at ¶ 39.) But nowhere in Plaintiff's complaint does she allege that any other employees failed to complete a training program in a timely manner. Therefore, she has failed to make an initial showing that *similarly situated* employees outside the protected class were treated differently.

Plaintiff asserts other alleged instances of disparity. She alleges that she "was required to meet specific peer review quotas under different conditions than her colleagues." (Doc. 1 at ¶ 13.) She alleges that some training opportunities were denied to her, while younger, white

11

colleagues were granted those opportunities. (Doc. 1 at ¶ 14.) She alleges that she was sent to Fred Pryor Training instead of receiving work-specific training that her colleagues received. (Doc. 1 at ¶ 25.) She alleges that she was denied the opportunity to attend an annual conference, which was encouraged by policy, while her white, younger colleagues were allowed to attend the conference. (Doc. 1 at ¶ 26.) And she alleges that in August 2022, she was denied an opportunity to seek a crime scene investigating position despite her years of experience investigating crime scenes (though she does not allege others were permitted to seek that position). (Doc. 1 at ¶ 27.)

For each of these incidents, Plaintiff omits key details that Plaintiff should know and which are necessary to determine whether other employees were similarly situated to her. As in *Khalik*, "there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement." *See Khalik*, 671 F.3d at 1194. For example, "She should know the reasons Defendant gave her for [the allegedly adverse employment action] and why in her belief those reasons were pretextual." *See id.* She cannot plausibly allege that her colleagues were similarly situated to her when she omits the reasons given to her for why she was denied certain opportunities and she does not allege that others were treated differently for whom that same reason applied. (She also does not allege that she was not provided with any reason.) Therefore, her failure to provide these critical details (which she should know) undermines her implied assertion that others were similarly situated. This contrasts with the *Fuller* case, where the plaintiff alleged that the reason given for her termination – subpar performance – also applied to coworkers outside the protected class who were not terminated. *See Fuller*, 2018 WL 4361187, at *2, *5. Here, Plaintiff has made no such allegations that any of her coworkers were "similarly situated" to her with regard to the asserted reasons for the denial of these opportunities.

Plaintiff also alleges that she was placed on a retraining program "[f]or the sole reason

that they could not find record of her original training." (Doc. 1 at ¶ 29.) She does not allege that anyone else was similarly situated in that the record of their original training could not be found. Although she alleges that Defendant's representatives "declined to view the records Plaintiff had kept of her initial training and which she offered to provide" (Doc. 1 at ¶ 33), she again omits any reasons provided to her for that action. Regardless, she does not allege that Defendant's representatives accepted records from any other individual of past completed training as would be important to show disparate treatment. Therefore, for these reasons, Plaintiff fails to plausibly allege intentional race, ancestry, or color discrimination.

**B. Plaintiff's allegation of a potential racial epithet was an isolated incident that does not constitute actionable racial harassment under Title VII.**

The same pleading standard applies to claims of racial harassment under Title VII as to claims of sexual harassment under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *see also* section II(B) above. The U.S. Supreme Court has recognized that "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Meritor Sav. Bank, FSB, v. Vinson*, 477 U.S. 57, 67 (1986). This is because "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* Accordingly,

> To establish a racially hostile work environment . . . plaintiffs must prove more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute. Instead, there must be a steady barrage of opprobrious racial comment. Title VII is violated only where the work environment is so heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority employee.

*Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987) (citations omitted).

Here, Plaintiff alleges that a fellow employee (not a supervisor) made an offhand remark

13

about a "Negro Virus" instead of using the accurate, similarly spelled, term, "necrotic virus." (Doc. 1 at ¶ 24.) Even if this counted as an incident of "racial enmity," it does not show more than a single isolated incident. Plaintiff has certainly not shown "a steady barrage of opprobrious racial comment." So Plaintiff has failed to plausibly allege a racial harassment claim.

Therefore, for these reasons and the reasons in section III(A) above, Plaintiff's claim of "race, ancestry, and color discrimination and harassment" (Count I) should be dismissed for failure to state a claim.

## IV. **Plaintiff's retaliation claim fails to state a claim due to lack of facts plausibly alleging a causal connection between protected activity and any adverse employment actions.**

As the Tenth Circuit has stated:

> To state a prima facie case for retaliation under Title VII, a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

*Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). The third prong, causation,

> can be shown in two ways: by showing that the adverse act bears sufficient temporal proximity to the protected activity, or by showing the existence of facts that suggest that the adverse action occurred because of the protected activity, or a combination of the two.

*Laurent-Workman v. Wormuth*, 54 F.4th 201, 218-19 (4th Cir. 2022). "'Temporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Id.* at 219 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

> Although there is no bright-line rule for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap between notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events.

14

*Id.*

Here, Plaintiff fails to plausibly allege causation. The only events alleged to have occurred after Plaintiff's administrative complaint process began on May 5, 2022 (Doc. 1 at ¶ 5) are her placement on a retraining program on or around August 1, 2022 (Doc. 1 at ¶¶ 29, 31), and her termination on December 5, 2022 (Doc. 1 at ¶ 39). Over two months passed between her administrative complaint and her being placed on a retraining program. And over 6 months passed between her administrative complaint and the termination of her employment. These months-long time frames are "sufficiently long so as to weaken significantly the inference of causation between the two events." And Plaintiff alleges no other facts to plausibly support an inference of causation. Therefore, Plaintiff's claim of "retaliation and retaliatory hostile work environment" should be dismissed for failure to state a claim due to lack of causation.

**V.    The Court should decline to exercise supplemental jurisdiction over the state law KADEA claim given the absence of a sufficient federal claim.**

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed for the reasons outlined above, and the court should decline to exercise jurisdiction over any remaining state claims. Alternatively, If the Court decides to exercise supplemental jurisdiction, it should dismiss the state-law KADEA claim against Defendant because Plaintiff does not plausibly allege any facts to plausibly support a claim for age discrimination or retaliation. (*See* Doc. 1 at ¶ 77.)

For these reasons, the Defendant requests that the Plaintiff's claims be dismissed.

15

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Stanley R. Parker, KS No. 10971
Assistant Attorney General/Trial Counsel
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
stanley.parker@ag.ks.gov
(785) 296-6244
(785) 368-8423
Fax: (785) 291-3767
*Attorneys for Defendant*

16

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 20th day of May, 2024, I electronically filed the foregoing with the Court using the CM/ECF system, and a notice of electronic filing was sent via the CM/ECF system to all counsel of record.

                                          */s/ Matthew L. Shoger*
                                          Matthew L. Shoger
                                          Assistant Attorney General