## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DEBORAH (DC) C. BROIL** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case No.** _____ |
| **2:24-cv-02029** ) | |
| ) | |
| **STATE OF KANSAS, KANSAS BUREAU** ) | |
| **OF INVESTIGATION AND ITS** ) | **WITH JURY TRIAL DEMAND** |
| **REPRESENTATIVES** ) | |
| *Serve:* ) | |
| **Attorney General Kris W. Kobach** ) | |
| **120 SW 10TH Avenue, 2nd Floor** ) | |
| **Topeka, KS  66612** ) | |
| ) | |
| ) | |
| *Defendant.* ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff Deborah (DC) C. Broil, by counsel, states the following as her First Amended Complaint against Defendant State of Kansas, Kansas Bureau of Investigation and its Representatives.

## INTRODUCTION

This is an action brought pursuant to Title VII for Count I, II, III and 42 U.S.C. §§ 1981 and 1985 to the KADEA for Count IV, seeking equitable and monetary relief as remedy for Defendant's unlawful employment practices. As pled below, Defendant unlawfully subjected Plaintiff to ongoing, continued age harassment and discrimination, race harassment and discrimination, color harassment and discrimination, sex harassment and discrimination, retaliation, and retaliatory harassment. The harassment Plaintiff suffered resulted in a hostile work environment.  The discrimination and retaliation culminated in her wrongful termination for complaining about such discrimination and harassment.

1

**JURISDICTION AND VENUE**

1.      Plaintiff files this complaint asserting claims under federal laws, and federal jurisdiction exists under Title VII for ~~Count~~Counts I, II, III and ~~42 U.S.C. §§ 1981 and 1985~~under the KADEA for Count IV.

2.      Venue is proper because the cause of action arose and the discriminatory actions giving rise to the claims occurred in ~~Shawnee County,~~ Kansas~~,~~ where Plaintiff was employed.

**PARTIES AND ADMINISTRATIVE EXHAUSTION OF REMEDIES**

3.      Plaintiff is a Black, African American female.  She is a former employee of Defendant.

4.      Defendant Kansas Bureau of Investigation is a Kansas state government agency and has a primary place of business located at 1620 Tyler Street, in Topeka, Kansas. Defendant

**ADMINISTRATIVE PROCEDURES**

5.      On May 5, 2022, Plaintiff timely filed amended her Charge of Discrimination (Charge No. 43751-22 and 28D-2022-00496) with the Kansas Human Rights Commission (KHRC) and Equal Employment Opportunity Commission (EEOC), alleging that Plaintiff was subjected to ongoing, continued age discrimination, race and color discrimination, sex discrimination, harassment, and retaliation.  After complaining about such discrimination and harassment, she was retaliated against and was suffering a retaliatory hostile work environment. In her Charge of Discrimination, Plaintiff complained about discrimination, harassment, and retaliation that is the subject of this lawsuit; alternatively, all conduct alleged in this Complaint would have arisen from the investigation of such Charge.

6.      On May 31, 2022, Plaintiff amended her Charge of Discrimination (Charge No.

43751-22 and 28D-2022-00496) with the Kansas Human Rights Commission (KHRC) and Equal Employment Opportunity Commission (EEOC), alleging that Plaintiff was subjected to ongoing, continued age discrimination, race and color discrimination, sex discrimination, harassment, and retaliation.  After complaining about such discrimination and harassment, she was retaliated against and was suffering a retaliatory hostile work environment.  In her Charge of Discrimination, Plaintiff complained about discrimination, harassment, and retaliation that is the subject of this lawsuit; alternatively, all conduct alleged in this Complaint would have arisen from the investigation of such Charge.

7.      On February 9, 2023, Plaintiff timely filed a Charge of Discrimination (Charge No. 44495-23 and 28D-2023-00374 with the Kansas Human Rights Commission (KHRC) and Equal Employment Opportunity Commission (EEOC), alleging that Plaintiff was subjected to ongoing, continued age discrimination, race and color discrimination, sex discrimination and harassment as well as retaliation, which culminated in the wrongful termination of Plaintiff's employment.  In her Charge of Discrimination, Plaintiff complained about discrimination, harassment, and retaliation that is the subject of this lawsuit; alternatively, all conduct alleged in this Complaint would have arisen from the investigation of such Charge.

8.      On October 24, 2023, the EEOC issued its Notice of Right to Sue, stating that Plaintiff is entitled to file a civil action related to her complaints of discrimination and retaliation.

9.      Plaintiff has fulfilled all conditions precedent to bringing this claim and has duly exhausted all administrative procedures prior to instituting this lawsuit, which is being commenced within ninety days of the date on which the EEOC issued to Plaintiff her Notice of Right to Sue.

## FACTUAL BACKGROUND

10.     Plaintiff is a Black/African American female.  She is 74 years old.  She was

employed by Defendant from April 29, 2019, to December 5, 2022.  She last held the position of Forensic Scientist III at Defendant's Kansas Bureau of Investigation Topeka Forensics Lab.

11.     Plaintiff was treated less favorably than her colleagues, denied opportunities, and was more closely scrutinized than her colleagues because of her race, sex, color, ancestry, and age. Plaintiff also suffered retaliation for her complaints of discrimination and retaliation. Rules, standards, and regulations were unfairly applied to Plaintiff. This discrimination, harassment, and retaliation began in May of 2021 and continued through her termination on December 5, 2022. This ongoing harassment created a hostile work environment.

12.     On December 2019, Jim Schiefereke ("Schiefereke") told a female employee, Bianca Bailey, to write and display the book title  "Elvis Presley: The last 24 Hours" as Plaintiff's book for the holiday decorations to humiliate Plaintiff relating to the demeaning way Elvis died - naked and alone in his bathroom after four months of constipation.  Plaintiff was so embarrassed she took the book title down.  This was reported to Human Resources via email on November 10, 2021.

13.     Plaintiff was required to meet specific peer review quotas under different conditions than her colleagues.

14.     Plaintiff was denied the opportunity to continue her training in the KBI Lab in November/December 2021.  The Plaintiff was denied a complaint form from Human Resources to submit a written complaint of the hostile experiences in the work environment. During a meeting with the Supervisor, HR Director, and Assistant Lab Director the plaintiff was told by the HR Director that she was revising a new form and would provide the plaintiff with the form when the revision was completed.   While Plaintiff's training was discontinued, her younger, white colleagues Bianca Bailey (age approximately 25 to 29) and Emma Stuhmer Turasky (age

4

approximately 26 to 32) were permitted to continue their training through. Plaintiff was denied the opportunity to do alcohol percent concentration determination testing. Both Bianca Bailey ("Bailey") and Emma Stuhmer Turasky ("Turasky") have completed the alcohol percent concentration determination. Plaintiff was denied the opportunity to learn the LAM storage system. She was denied the opportunity to do UV and LC/UV/MS Quantitation instrument training. Bailey and Turasky were not denied these trainings, and Turasky was also afforded the opportunity to complete the THC Quantitation.

15.     In 2021, Schiefereke updated other instruments with shorter methods on GC/MS instruments. When Plaintiff asked Schiefereke about putting a shorter method on her instrument, Hp-4, to shorten her instrument time and finish her work more quickly, Schiefereke responded that Plaintiff had to write a shorter method for Hp-4. Schiefereke did not put the shorter methods on Hp-4. Plaintiff learned that the shorter method had already been written and was being used on several other instruments. Complainant asked another scientist, Beth Royel, to help her add two shorter methods to Hp-4 and learn how to validate new methods. It was during this validation process Complainant learned that Turasky had already been trained to validate on Complainant's Hp-4 instrument, earlier in the year.

16.     Early in May 2021, Schiefereke left a DVD movie on the Complainant's desk with a sticky note saying "I forgot to rewind Jackpot. Sorry, Jim." The DVD movie contained sexual scenes that were offensive to the Complainant. Plaintiff reported the offensive movie to the Assistant Lab Director, Mary Henderson. Henderson told the Plaintiff to tell the Schiefereke she did not like that kind of movie and refused to take a complaint.

17.     Schiefereke and Plaintiff shared instrument Hp-6 beginning in 2019. In late May 2021, Schiefereke yelled at Plaintiff that he would use whatever instrument he wants and will not

ask to use an instrument. Schiefereke threatened her that if she asked him to get off Hp-6, she would NEVER receive help from him with instrument repairs. It was Schiefereke's job to maintain all Chemistry Department instruments, and Plaintiff did not have the expertise to fix/repair GC/MS instruments. This was reported to Christa Knox ("Knox"), Chemistry Supervisor, that same day.

18.     When Plaintiff returned to work on May 24, 2021, Schiefereke would not greet Plaintiff or even acknowledge her.  Plaintiff was completely ignored by Schiefereke and Bailey.

19.     By May 27, 2021, the environment was so hostile, tense, and stressful that Plaintiff vomited at work.

20.     The work environment continued to grow more hostile. By June 2021, Plaintiff had lost so much hair due to the stress and hostility that she had to shave her head.

21.     Plaintiff had several meetings with Rebeka Stanley in HR, during which Plaintiff reported the unbearably hostile work environment she was experiencing.

22.     On or about August 19, 2021, Stanley refused to file a complaint on Plaintiff's behalf.

23.     Schiefereke communicated respectfully with the younger, white, Caucasian scientists.  Plaintiff put a tremendous effort into communicating with Schiefereke to support a strong and friendly work environment.

24.     On or about October 11, 2021, Schiefereke approached Plaintiff while she was setting up a sequence on Hp-4 instrument and told her that the Chinese Wuhan Lab was making a Negro   Virus.     He    then    repeated    the    statement    when    she    was    silent -
"They are making a Negro Virus." Schiefereke continued to laugh and when a female colleague, Bianca Bailey, came in, he repeated, "They are making a Negro Virus."  Schiefereke said, "You know, the virus that will cause your arms and legs to rot."  Bailey responded, "Oh, necrotic?"

They both laughed. Plaintiff reported this discriminatory and harassing conduct.

25.     After Plaintiff's regular training was discontinued in 2021, she was sent to Fred Pryor Training for the first and second quarter of 2022 instead of receiving the work-specific training her colleagues received.

26.     Plaintiff was denied the opportunity to attend SWAF conference in Las Vegas in June 2022, which was encouraged by policy for each year, while her white, younger colleagues were allowed to attend the conference.

27.     In August 2022, Plaintiff was denied the opportunity to seek the crime scene investigating position despite her years of experience investigating crime scenes.

28.     In 2019, Plaintiff's supervisor at the time, Dwain Worley at the time created her original training program, based on Plaintiff's years of experience (more than 13 years) and pursuant to KBI policy.  Plaintiff completed the required training, passed the training and testing before receiving her work authorization. Worley was approximately aged 59-62 when Plaintiff was hired; he retired the following year in 2020.

29.     On August 1, 2022, after working several years as a KBI Forensic Scientist III and earning the required work authorization much earlier in her employment, Plaintiff was suddenly placed on a retraining program, which required extensive review and memorization of training materials that are provided to new Forensic Scientists with no work experience. Plaintiff was required to pass the examinations for each retraining ~~modcule~~module at the 90% rate.  Plaintiff was told that there was no record of her original training, but which there was no dispute had been completed as Plaintiff had received the work authorization earlier in her employment.  For the sole reason that they could not find record of her original training, Defendant told Plaintiff that she was required to complete an extensive retraining program.

30.     In the beginning of Plaintiff's retraining program, she was not provided all necessary materials upon which she was examined on the first test.  Other white, younger scientists had received one-on-one training on some of the topics and had at least been provided all necessary materials.

31.     Upon information and belief, no one who entered the KBI Chemistry Lab with prior work experience, had been put on a retraining program other than Plaintiff based upon what she was told during the first retraining meeting by the Laboratory Director on July 28, 2022.  The KBI policy specifically states in number six of the KBI Training Program, scientists with prior experience will have a training program written for them that is approved by the supervisor and/or tech lead. It is only when the experienced scientist fails to satisfactorily complete and pass the training program that was specifically designated for them, that the experienced scientist is required to go back and start the training program from the beginning as if they were a newly graduated from college employees, without experience.

32.     Notably, Plaintiff completed an approved training program, passed all examinations, and earned a work authorization when initially hired at the KBI.

33.     The Lab Director and the Retraining Team insisted they had to write the Retraining Program only because there was no record of Plaintiff's original training program. However, they indicated there had been no specific problem with Plaintiff's job performance and further, they declined to view the records Plaintiff had kept of her initial training and which she offered to provide.

34.     The training program schedule was unfair and designed so Plaintiff would fail to complete it within the allotted time period. For example, the program provided no time to address correspondence and other administrative tasks Plaintiff had as a scientist who had been previously

working fulltime, respond to subpoenas for court testimony on completed laboratory analysis, or participate in office meetings. When Plaintiff was subpoenaed and prepared for and attended court to testify, no adjustment was made to her retraining schedule.  The retraining program provided for no vacation time, sick time, or inclement weather. The Chemistry Supervisor, Knox, emailed information and provided a textbook she used during her training to answer questions in the retraining module since materials were not provided to Plaintiff that covered all of the topics being tested. The trainer, Chris Riddle, was copied on the email and the textbook provided was used to complete the assignment. Plaintiff submitted the completed assignment to Riddle, but he would not accept the work after being copied on the email. Plaintiff was required to re-do the assignment, which required more time, putting Plaintiff further behind schedule. Additionally, some days the trainer left work early and worked from home delaying Plaintiff's progress as she had to wait until the trainer returned to work so she could get her questions answered and continue with training.

35.    Plaintiff was often denigrated when she asked questions concerning areas not directly covered by the training materials. The trainer would sometimes not answer the Plaintiff's questions, stating "I already answered that question, " which required Plaintiff waste additional time searching for the answer.

36.    Plaintiff was required to provide a detailed plan before she was allowed to work from home, even though her colleagues were not required to do this.

37.    Plaintiff was required to submit a daily account of what had been done and also have a daily meeting with her supervisor and trainer.  There were meetings with the supervisor and trainer together, also meetings with the supervisor alone and meetings with the trainer alone each day. These meetings took time from Plaintiff's training.

38.    Plaintiff's annual review (November/December 2021) was recorded by Defendant,

but Plaintiff was denied a copy of the recording.  Plaintiff believes she was videotaped or recorded without her knowledge or consent on or about August 2022.

39.    On December 5, 2022, the discrimination and retaliation culminated in her termination after another unfair and inaccurate performance review that stated Plaintiff did not complete the retraining program in a timely manner.

40.    Plaintiff was terminated based upon her sex (female), her race/ancestry (African - American American)), her color (Black), her age, and as an act of retaliation for having openly opposed acts and practices forbidden by state and federal law.

41.    As a direct result of Defendant's unlawful actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, hair loss, sleep deprivation and interruption, trauma, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is entitled to an award of monetary damages and equitable relief.

## COUNT I – RACE, ANCESTRY, AND COLOR DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII

For her claims under Count I against Defendant State of Kansas, Kansas Bureau of Investigation, Plaintiff states the following:

42.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 41 as though fully set forth herein.

43.    Plaintiff is a Black and African American, and thus a member of those protected classes.

44.    Plaintiff was qualified for the position of Forensic Scientist III.

45.     Plaintiff was treated lass favorably than her non-black, non-African American colleagues as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 47A-47P below.

43.46.  While Plaintiff was an employee of and/or subject to the direction and control of the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on race and color on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found and, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

44.     Plaintiff was placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues based upon her race, color, and ancestry.

47.     Plaintiff was subjected to a hostile work environment based upon her race, color, and nationality that involved racially offensive jokes, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her white colleagues.

48.     Because of her race, color, and ancestry, Plaintiff suffered adverse employment actions and a hostile work environment, which included but is not limited to the following:

A.      Her regular KBI training was suspended, while her similarly situated white colleagues were permitted to continue their training;

B.      She was denied the opportunity to attend conferences, while her similarly situated white colleagues were permitted to attend;

C.      She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated white colleagues were permitted to apply;

D.      She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the white, male who harassed her was not sent to any training;

E.      She was required to meet specific peer review quotas under different conditions than her similarly situated white colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

F.      Her equipment was not updated with the shorter methods uploaded to her similarly situated white colleagues' equipment which limited her ability to complete her tasks more quickly and with greater efficiency;

G.      She was prohibited from working from home without a detailed plan, but her similarly situated white colleagues were allowed to work from home without providing any plan;

H.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated white colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

I.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated white colleagues;

J.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated white colleagues were not recorded;

K.    HR refused to file complaints on her behalf when she complained in violation of their policy;

L.    She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated white colleagues were not placed on a similar retraining program;

M.    During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated white colleagues during training;

N.    Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

O.    Her employment was wrongfully terminated because of her race, color, and nationality.

45.49.  Defendant knew or should have known about the hostile and offensive work environment based on race, color, and colornationality and failed to take prompt remedial or corrective action to end such harassment as described in the background facts.  All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment or agency, as set forth herein, and amount to violations of Title VII.

46.50.  As a direct result of Defendant's unlawful actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is entitled to an award of monetary damages and equitable relief.

47.     The conduct of the Defendant was willful, wanton, and malicious, evidencing an evil motive or in reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

48.51.  Plaintiff is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual and punitive damages, all costs, expenses, expert witness fees and attorney's fees incurred herein and appropriate equitable relief, for interest at the highest lawful rate and for such other relief as the Court deems just and proper.

## COUNT II – SEX DISCRIMINATION AND SEX HARASSMENT IN VIOLATION OF TITLE VII

For her claims under Count II against Defendant State of Kansas, Kansas Bureau of Investigation, Plaintiff states the following:

49.52.  Plaintiff incorporates by reference the allegations of Paragraphs 1 through 4851 as though fully set forth herein.

53.     Plaintiff is a female and thus a member of that protected class.

54.     Plaintiff was qualified for the position of Forensic Scientist III.

55.     Plaintiff was treated lass favorably than her male colleagues as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 58A-58N below.

49.     While Plaintiff was an employee of and/or subject to the direction and control of

50.56.  the  Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based onupon her sex on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found and, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

50.   Plaintiff was placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues based upon her sex.

57.   Plaintiff was subjected to a hostile work environment because of her female sex that involved sexually offensive DVR content, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her male colleagues.

58.   Because of her sex, Plaintiff suffered adverse employment actions and a hostile work environment, which included but is not limited to the following:

A.   She was denied the opportunity to attend conferences, while her similarly situated male colleagues were permitted to attend;

B.   She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated male colleagues were permitted to apply;

C.   She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the male employee who harassed her was not sent to any training;

D. She was required to meet specific peer review quotas under different conditions than her similarly situated male colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

E. Her equipment was not updated with the shorter methods uploaded to her similarly situated male colleagues' equipment, which limited her ability to complete her tasks more quickly and with greater efficiency, and her male colleague refused to update her equipment without consequence;

F. She was prohibited from working from home without a detailed plan, but her similarly situated male colleagues were allowed to work from home without providing any plan;

G. She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated male colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

H. Her performance was unfairly evaluated and less favorably evaluated than similarly situated male colleagues;

I. Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated male colleagues were not recorded;

J. HR refused to file complaints on her behalf when she complained in violation of their policy;

K. She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated male colleagues were not placed on a similar retraining program;

L.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated male colleagues during training;

M.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

N.      Her employment was wrongfully terminated because of her sex.

51.59.  Defendant knew or should have known about the hostile and offensive work environment based on sex and failed to take prompt remedial or corrective action to end such harassment as described in the background facts.  All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment or agency, as set forth herein, and amount to violations of Title VII.

52.60.  As a direct result of Defendant's unlawful actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is entitled to an award of monetary damages and equitable relief.

51.      The conduct of the Defendant was willful, wanton, and malicious, evidencing an evil motive or in reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

53.61.  Plaintiff is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual ~~and punitive~~ damages, all costs, expenses, expert witness fees and attorney's fees incurred herein and appropriate equitable relief, for interest at the highest lawful rate and for such other relief as the Court deems just and proper.

## COUNT III – RETALIATION AND RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

For her claims under Count III against Defendant State of Kansas, Kansas Bureau of Investigation, Plaintiff states the following:

~~54.~~62.  Plaintiff incorporates by reference the allegations of Paragraphs 1 through ~~55~~61 as though fully set forth herein.

63.    Plaintiff engaged in protected opposition to sex, race, color, and nationality and opposition to retaliation because of those complaints, which she made through internal complaints as well has her Charges of Discrimination referenced herein. A reasonable employee would have found the actions and treatment challenged to be materially adverse.

64.    Plaintiff was treated lass favorably than similarly situated colleagues who had not reported discrimination and retaliation as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 67A-67N below.

~~55.~~65.  While Plaintiff was an employee of and/or subject to the direction and control of Defendant and based upon Plaintiff's opposition to and complaints of discrimination and retaliation, Defendant subjected Plaintiff to a hostile and offensive work environment on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found ~~and,~~ which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

66.   Plaintiff was ~~placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues~~ subjected to a hostile work environment based upon her opposition ~~to~~ of protected activity which involved denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and ~~complaints of~~ undeserving of being treated with the respect provided to her colleagues who had not opposed discrimination.

67.   As a result of and after Plaintiff's protected opposition to discrimination and retaliation~~.~~, Plaintiff suffered adverse employment actions and a hostile work environment, which included but is not limited to the following:

A.   She was denied the opportunity to attend conferences, while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to attend;

B.   She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to apply;

C.   She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the white, male who harassed her and not opposed discrimination and retaliation was not sent to any training;

D.   She was required to meet specific peer review quotas under different conditions than her similarly situated colleagues, who had not opposed

discrimination and retaliation, including being limited to being peer reviewed by three chemists each with different requirements;

E.      Her equipment was not updated with the shorter methods uploaded to the equipment of her similarly situated colleagues, who had not opposed discrimination and retaliation, which limited her ability to complete her tasks more quickly and with greater efficiency;

F.      She was prohibited from working from home without a detailed plan, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were allowed to work from home without providing any plan;

G.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were not required to submit these daily accounts when working from home or have daily meetings during their training;

H.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated colleagues, who had not opposed discrimination and retaliation;

I.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated colleagues, who had not opposed discrimination and retaliation, were not recorded;

J.      HR refused to file complaints on her behalf when she complained in violation of their policy;

K.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated colleagues, who

had not opposed discrimination and retaliation, were not placed on a similar retraining program;

L.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated colleagues, who had not opposed discrimination and retaliation, during training;

M.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

A.N. Her employment was wrongfully terminated in retaliation for her complaints of discrimination and retaliation.

56.68. Defendant knew or should have known about the hostile and offensive work environment and failed to take prompt remedial or corrective action to end such harassment as described in the background facts.  All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment or agency, as set forth herein, and amount to violations of Title VII.

57.69. Plaintiff was placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues based upon her opposition to and complaints of discrimination and retaliation.

21

58.70.  As a direct result of Defendant's unlawful retaliatory actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is entitled to an award of monetary damages and equitable relief.

52.     The conduct of the Defendant was willful, wanton, and malicious, evidencing an evil motive or in reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

59.71.  Plaintiff is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual and punitive damages, all costs, expenses, expert witness fees and attorney's fees incurred herein and appropriate equitable relief, for interest at the highest lawful rate and for such other relief as the Court deems just and proper.

COUNT IV—AGE DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF THE AGE DISCRIMIANTION IN EMPLOYMENT ACT

For her claims under Count IV against Defendant, Plaintiff states the following:

53.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 63 as though fully set forth herein.

54.     Plaintiff is over the age of 40. Thus, she is a member of a class of persons protected by the ADEA by virtue of her age.

55.     At all times relevant herein, Plaintiff was qualified for her position as a Forensic Scientist.

56.     While Plaintiff was an employee of and/or subject to the direction and control of

the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on age on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found and which a reasonable person would find to be offensive and which altered terms, privileges, and/or conditions of her employment.

57.    Plaintiff was placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues based upon her age and opposition to and complaints of age discrimination and retaliation.

58.    Defendant knew or should have known about the hostile and offensive work environment based on age and failed to take prompt remedial or corrective action to end such harassment as described in the background facts. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment or agency, as set forth herein, and amount to violations of the ADEA.

59.    As a direct result of Defendant's unlawful actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is entitled to an award of monetary damages and equitable relief.

60.    The conduct of the Defendant was willful, wanton, and malicious, evidencing an evil motive or in reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

61.    Plaintiff is entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual and punitive damages, all costs, expenses, expert witness fees and attorney's fees incurred herein and appropriate equitable relief, for interest at the highest lawful rate and for such other relief as the

~~Court deems just and proper.~~

### ~~COUNT V~~COUNT IV VIOLATION UNDER KANSAS AGE DISCRIMINATION IN EMPLOYMENT ACT ("KADEA"), K.S.A. 44-111`1, ET. SEQ. – AGE DISCRIMINATION

~~60.~~72.  Paragraphs 1 through ~~72~~71 above are incorporated herein by reference.

~~61.~~73.  Defendant is an employer within the meaning of the KADEA.

~~62.~~74.  Plaintiff is over the age of 40.  Thus, she is a member of a class of persons protected by the KADEA by virtue of her age.

~~63.~~75.  At all relevant times herein, Plaintiff was qualified for the position she held while employed by Defendant.

76.    Plaintiff was treated lass favorably than her younger colleagues as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 79A-79O below.

77.    While Plaintiff was an employee of and/or subject to the direction and control of the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on age on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

78.    Plaintiff was subjected to a hostile work environment based upon her age that involved denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her younger colleagues.

79.    Because of her age, Plaintiff suffered adverse employment actions and a hostile work environment, which included but is not limited to the following:

A.     Her regular KBI training was suspended, while her similarly situated younger colleagues were permitted to continue their training;

B.     She was denied the opportunity to attend conferences, while her similarly situated younger colleagues were permitted to attend;

C.     She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated younger colleagues were permitted to apply;

D.     She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the younger male who harassed her was not sent to any training;

E.     She was required to meet specific peer review quotas under different conditions than her similarly situated younger colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

F.     Her equipment was not updated with the shorter methods uploaded to her similarly situated younger colleagues' equipment which limited her ability to complete her tasks more quickly and with greater efficiency;

G.     She was prohibited from working from home without a detailed plan, but her similarly situated younger colleagues were allowed to work from home without providing any plan;

H.     She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated younger colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

I.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated younger colleagues;

J.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly younger white colleagues were not recorded;

K.      HR refused to file complaints on her behalf when she complained in violation of their policy;

L.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated younger colleagues were not placed on a similar retraining program;

M.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated younger colleagues during training;

N.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

O.      Her employment was wrongfully terminated because of her age.

64.80.  Plaintiff suffered adverse employment actions when Plaintiff was placed on a retraining program, denied opportunities, unfairly evaluated, terminated, and treated differently than her colleagues based upon her age and opposition to and complaints of age discrimination and retaliation.

65.81.  As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of incomes, as well as other monetary and non-monetary benefits.

66.82.  Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of liquidated damages. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees and court costs.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for such damages as are fair and reasonable, including back wages and other benefits of employment, pre-judgment interest, future lost wages and benefits of employment, liquidated damages, attorneys' fees and costs, and for such additional relief as may be just and proper under the circumstances.

### COUNT VI - VIOLATION OF 42 U.S.C. §§ 1983 - DISCRIMINATION, HARASSMENT, AND RETALIATION

For her claims under Count VI against Defendant, Plaintiff states the following:

62.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 79 as though fully set forth herein.

63.     Defendant is a state agency and is an arm of the state.

64.     Defendant has a pattern and practice of discriminating against African Americans.

65.     This pattern and practice violated Plaintiff's Fourteenth Amendment to the United State Constitution's right to equal protection and due process under the laws.

66.     Plaintiff has lost wages, pension payments and benefits, and will continue to lose wages, pension payments and benefits because Defendant terminated her employment.  Plaintiff has also suffered mental anguish, deprivation of her civil rights, inconvenience, emotional distress, embarrassment, degradation, humiliation, loss of enjoyment of life, pain and suffering and other

~~non-pecuniary losses, past, present, and continuing to the future.~~

~~WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of $75,000, for costs herein incurred and expended, for actual, compensatory, and punitive damages, for interest at the highest lawful rate, injunctive relief, and for such other relief as the Court deems just and proper.~~

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deborah (DC) C. Broil respectfully demands a trial by jury on all the allegations contained in this Complaint that are triable before a jury.

Respectfully submitted,

**BRATCHER GOCKEL LAW, L.C.**

By:   */s/Erin N. Vernon*
    Erin N. Vernon, KS Bar No.: 25792
    Lynne Jaben Bratcher, MO Bar No.: 31203
    4014 B. South Lynn Court Drive
    Independence, MO  64055
    Ph: (816) 221-1614
    Fax: (816) 421-5910
    E-Mail: erin@bgklawyers.com
       lynne@bgklawyers.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of June 2024 a copy of the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system to all counsel of record.

*/s/Erin N. Vernon*
Attorney for Plaintiff