IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBORAH (DC) C. BROIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-2029-DDC-RES |
| | ) |
| STATE OF KANSAS, KANSAS BUREAU | ) |
| OF INVESTIGATION AND ITS | ) |
| REPRESENTATIVES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MOTION TO DISMISS

Defendant Kansas Bureau of Investigation (KBI) ("Defendant"), respectfully requests the Court dismiss this suit under Fed. R. Civ. P. 12(b)(6). Defendant states the following in support.

## NATURE OF THE CASE

Plaintiff, a former employee of the KBI, alleges that the termination of her employment with the KBI on December 5, 2022, along with other various incidents during her employment,[1] constitute race, ancestry, and color discrimination, sex discrimination, age discrimination, and retaliation for internal complaints and complaints to the Equal Employment Opportunity Commission (EEOC) and the Kansas Human Rights Commission (KHRC). (Doc. 22 at 1, 10, ¶¶ 5, 63.) She also alleges that racial, sexual, and age harassment and retaliatory harassment resulted in a hostile work environment. (Doc. 22 at 1.) Plaintiff filed this lawsuit on January 22, 2024 (Doc. 1), and filed an Amended Complaint ("Complaint") on June 18, 2024 (Doc. 22). She brings claims under Title VII of the Civil Rights Act of 1964 and the Kansas Age Discrimination in Employment Act (KADEA). (Doc. 22 at 10-25.)

---

[1] *See* Exhibit A ("Timeline of (Alleged) Events").

The Court should dismiss Counts I ("Race, Ancestry, and Color Discrimination and Harassment") and II ("Sex Discrimination and Sex Harassment") under Title VII due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment. The Court should dismiss Count III ("Retaliation and Retaliatory Hostile Work Environment") under Title VII due to lack of causation. And the Court should decline to exercise supplemental jurisdiction over the KADEA claim (Count IV) or dismiss it for failure to state a claim.

## ARGUMENTS AND AUTHORITIES

I. **Plaintiff failed to timely exhaust administrative remedies with regard to several alleged events.**

A Charge of Discrimination must be filed within 180 or 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Here, Plaintiff first filed a Charge of Discrimination on May 5, 2022, more than 300 days after all of the following incidents: the holiday decorations incident in December 2019, the DVD incident in May 2021, her co-worker yelling at her in May 2021, her co-workers ignoring her in May 2021, her vomiting at work in May 2021, and her shaving her head in June 2021. (Doc. 22 at ¶¶ 5, 12, 16-20.) Because it is clear from the face of the complaint that claims regarding these incidents were not filed with EEOC or KHRC within the statutory time, Plaintiff failed to exhaust administrative remedies with respect to them, and claims regarding these incidents should be dismissed. *See Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019).

II. **Plaintiff's discrimination-and-harassment claim based on race, ancestry, and color fails to state a claim due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment.**

   A. **Plaintiff fails to allege facts plausibly suggesting intentional discrimination on the basis of race, ancestry, or color.**

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in

2

her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). To survive a motion to dismiss, the plaintiff "needs to allege facts that, if true, plausibly allow a factfinder to conclude that the [defendant] violated Title VII." *Fuller v. Kan. Dep't of Child. & Fams.*, No. 16-2415-DDC, 2018 WL 4361187, at *4 (D. Kan. Sept. 13, 2018) (citing *Khalik*, 671 F.3d at 1193). For an intentional discrimination claim, a plaintiff must allege facts that plausibly allow a factfinder to conclude that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *See Khalik*, 671 F.3d at 1192.

Accordingly, allegations that a plaintiff was a member of a protected class, performed her job well, was grabbed by the arm in the office, and was fired are not sufficient to state a claim. *Khalik*, 671 F.3d at 1193-94. And it is not sufficient to make conclusory allegations that others were "similarly situated." *Shifrin v. Toll*, 483 F. App'x 446, 450 (10th Cir. 2012) (citing *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011)). "[D]ismissal is proper where a party offers only conclusory allegations that others are similarly situated, without any factual support plausibly suggesting similarities 'in all material respects.'" *Id.* (quoting *Kan. Penn Gaming*, 656 F.3d at 1220); *see also Mitchell v. City of Wichita*, 140 F. App'x 767, 783 (10th Cir. 2005) (applying the same "similarly situated" analysis to Title-VII and equal-protection claims). It is not sufficient to make "this conclusory statement without providing any factual details such as who was treated differently, when they were treated differently, or how they were treated differently." *Richardson v. Kellogg Co.*, No. 14-2372-DDC, 2014 WL 7338844, at *8 (D. Kan. Dec. 22, 2014). In contrast, in *Fuller*, this Court held that a plaintiff of a minority race plausibly alleged a claim of intentional discrimination when she alleged that her

3

employer fired her for "subpar work performance" yet did not terminate the employment of "lower performing employees" (who were presumed white since most of the employees were white). *Fuller*, 2018 WL 4361187, at *2, *5. The reason the plaintiff was fired in *Fuller* also applied to the comparable employees, rendering them substantially similar. *See id.* And when the adverse employment action is based on a policy or rule, the prima facie case includes showing that similarly situated employees outside the protected class who violated the same rule were treated differently. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988).

Here, Plaintiff alleges that the reason she was provided for why her employment was terminated was that she did not complete a training program in a timely manner. (Doc. 22 at ¶ 39.) But Plaintiff does not allege that any other employees failed to complete a training program in a timely manner. Therefore, she has failed to make an initial showing that *similarly situated* employees outside the protected class were treated differently.

Plaintiff asserts other alleged instances of disparity regarding peer review quotas (Doc. 22 at ¶ 13), denial of training opportunities (Doc. 22 at ¶ 14), remedial training (Doc. 22 at ¶¶ 25, 48(D)), and denial of an opportunity to attend a conference (Doc. 22 at ¶ 26). And she amended her complaint to allege (in a conclusory manner) that "similarly situated" employees were treated differently than her with regard to some of the other alleged events. (*See* Doc. 22 at ¶¶ 47-48; *see also id.* at ¶¶ 57-58, 66-67, 78-79.) For each of these incidents, Plaintiff omits key details that she should know and which are necessary to determine whether other employees were similarly situated to her. "[T]here are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement." *See Khalik*, 671 F.3d at 1194. For example, "[s]he should know the reasons Defendant gave her for [the allegedly adverse employment action] and why in her belief those reasons were pretextual." *See id.* She cannot plausibly allege that her colleagues

4

were similarly situated to her when she omits the reasons given to her for why she was denied certain opportunities and she does not allege that others were treated differently for whom that same reason applied. (She also does not allege that she was not provided with any reason.) Therefore, her failure to provide these critical details (which she should know) undermines her implied assertion that others were similarly situated. This contrasts with the *Fuller* case, where the plaintiff alleged that the reason given for her termination – subpar performance – also applied to coworkers outside the protected class who were not terminated. *See Fuller*, 2018 WL 4361187, at *2, *5. Here, Plaintiff has made no such allegations that any of her coworkers were "similarly situated" to her with regard to the asserted reasons for any of these actions.

Plaintiff also alleges that she was placed on a retraining program "[f]or the sole reason that they could not find record of her original training." (Doc. 22 at ¶ 29.) She does not allege that anyone else was similarly situated in that the record of their original training could not be found. Although she alleges that Defendant's representatives "declined to view the records Plaintiff had kept of her initial training and which she offered to provide" (Doc. 22 at ¶ 33), she again omits any reasons provided to her for that action. Regardless, she does not allege that Defendant's representatives accepted records from any other individual of past completed training as would be important to show disparate treatment. Therefore, for these reasons, Plaintiff fails to plausibly allege intentional race, ancestry, or color discrimination.

**B. Plaintiff's allegation of a potential racial epithet was an isolated incident that does not constitute actionable racial harassment under Title VII.**

"To constitute actionable harassment, the conduct must be sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. E.E.O.C.*, 180 F. App'x 14, 18 (10th Cir. 2006) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir. 1994)). More specifically:

> To state a racially hostile work environment claim under Title VII, a plaintiff must allege: (1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment.

*Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024). The U.S. Supreme Court has recognized that "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Meritor Sav. Bank, FSB, v. Vinson*, 477 U.S. 57, 67 (1986). This is because "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.*

> To establish a racially hostile work environment . . . plaintiffs must prove more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute. Instead, there must be a steady barrage of opprobrious racial comment. Title VII is violated only where the work environment is so heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority employee.

*Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987) (citations omitted).

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. [citation omitted] Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also id.* at 786-87 (saying the same standard applies to claims of racial harassment and sexual harassment under Title VII). "The Supreme Court and the Tenth Circuit have stated that courts should filter cases involving isolated incidents unless the isolated incident is extremely serious." *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1243 (D. Kan. 2005) (citing *Faragher*, 524 U.S. at 788)).

In addition, an employer can only be held "directly liable for an employee's unlawful

harassment if the employer was negligent with respect to the offensive behavior," which occurs "if the employer knew or reasonably should have known about the harassment but failed to take remedial action." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

Here, Plaintiff alleges that a fellow employee (not a supervisor) made an offhand remark about a "Negro Virus" instead of using the accurate, similarly spelled, term, "necrotic virus." (Doc. 22 at ¶ 24.) Even if this counted as an incident of "racial enmity," it does not show more than a single isolated incident. Plaintiff has certainly not shown "a steady barrage of opprobrious racial comment." *See Hicks*, 833 F.2d at 1412-13. And Plaintiff has not alleged any facts to plausibly show that any other alleged acts were done "due to race." *See Young*, 94 F.4th at 1249. So Plaintiff has failed to plausibly allege a racial harassment claim.

What is more, the alleged bad actor in the case of the "Negro Virus" comment was a mere co-worker and is not alleged to have been a supervisor. Plaintiff alleges she reported the comment to an unidentified person or persons (Doc. 22 at ¶ 24) but does not allege that any supervisors were aware of it or that they failed to take remedial action. She also does not allege circumstances sufficient that a supervisor should have reasonably been expected to take remedial action. So Plaintiff has failed to allege facts plausibly supporting vicarious liability.

For these reasons and those in section II(A) above, the claim of "race, ancestry, and color discrimination and harassment" (Count I) should be dismissed for failure to state a claim.

### III. **Plaintiff's sex-discrimination-and-harassment claim fails to state a claim due to lack of facts plausibly suggesting intentional discrimination or severe or pervasive harassment.**

#### A. **Plaintiff fails to allege facts plausibly suggesting intentional discrimination on the basis of sex.**

The same pleading standard applies to claims of intentional sex discrimination under Title VII as to claims of intentional racial, ancestry, or color discrimination under Title VII. *See*

7

section II(A) above; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192-94 (10th Cir. 2012). So Plaintiff is required to plausibly allege intentional discrimination by alleging facts that, if true, plausibly allow a factfinder to conclude that: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192.

Here, no alleged facts provide any plausible reason to believe that she was terminated due to sex. Although she makes conclusory allegations that she was treated differently than "her similarly situated male colleagues" (Doc. 22 at ¶ 58), she has not alleged "any factual details such as who was treated differently, when they were treated differently, or how they were treated differently." *See Richardson v. Kellogg Co.*, No. 14-2372-DDC, 2014 WL 7338844, at *8 (D. Kan. Dec. 22, 2014). So she fails to provide "factual support plausibly suggesting similarities 'in all material respects.'" *See Shifrin v. Toll*, 483 F. App'x 446, 450 (10th Cir. 2012). Not only that, but in one of the only two places in the Complaint where she asserts that specific people were treated better than her, they were of the same sex. (*See* Doc. 22 at ¶ 14. *But see id.* at ¶ 48(D).) She has not alleged any facts otherwise tending to make it plausible that she was terminated on the basis of her sex or that any other adverse actions were taken on the basis of her sex. So Plaintiff has failed to plausibly state a claim of intentional discrimination on the basis of sex.

### B. Plaintiff's viewing of an objectionable movie was an isolated incident that does not constitute actionable sexual harassment under Title VII.

The same pleading standard applies to claims of racial harassment under Title VII as to claims of sexual harassment under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *see also* section II(B) above.

> To state a claim for sexual harassment, plaintiff must allege "(1) [she] was discriminated against because of [her] sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of h[er]

8

employment."

*Kincaid v Unified Sch. Dist. No. 500*, 572 F. Supp. 3d 1081, 1095-96 (D. Kan. 2021) (quoting *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021)) (alterations in original).

As noted above, "[t]he Supreme Court and the Tenth Circuit have stated that courts should filter cases involving isolated incidents unless the isolated incident is extremely serious." *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1243 (D. Kan. 2005) (citing *Faragher*, 524 U.S. at 788)). Accordingly, this Court has previously ruled that "an isolated incident, the viewing of a movie that contained a scene involving sexual activity" fell "far short" of this standard and failed to state a claim for purposes of a motion to dismiss. *Id.* In that case, the plaintiff was a custodian cleaning the room where the movie was playing. *Id.* at 1237-38.

Here, Plaintiff alleges an isolated incident where a DVD movie that "contained sexual scenes that were offensive to" her was left on her desk with a note signed by one of her co-workers. (Doc. 22 at ¶ 16.) This is "an isolated incident" like in the *Dockery* case, which also involved "the viewing of a movie that contained a scene involving sexual activity." *See Dockery*, 382 F. Supp. 2d at 1243. Further, Plaintiff does not even allege that she viewed the scenes that were offensive to her. If she did, she would had to have chosen to initiate the playing of the movie herself. She does not allege that it was already playing, that she was directed by supervisors to watch it, or that she was forced to watch it through any other circumstances.

What is more, the alleged bad actor was a mere co-worker and is not alleged to have been a supervisor. Plaintiff alleges that she reported the offensive movie to a supervisor (Doc. 22 at ¶ 16), but she does not allege circumstances sufficient that a supervisor should have reasonably been expected to take remedial action. Federal law does not require disciplinary action simply because one employee discovers they have different preferences in movies than another employee. So Plaintiff has failed to allege facts to plausibly support vicarious liability.

And Plaintiff has not alleged any facts to plausibly show any other alleged acts were done because of her sex. *See Kincaid*, 572 F. Supp. 3d at 1095-96. So Plaintiff has failed to plausibly allege a sexual harassment claim. For these reasons and those in section III(A), Plaintiff's claim for "sex discrimination and sex harassment" (Count II) should be dismissed.

## IV. Plaintiff's retaliation claim fails to state a claim due to lack of facts plausibly alleging a causal connection between protected activity and any adverse employment actions.

### A. Plaintiff fails to allege facts plausibly suggesting any discrete acts of of retaliation.

As the Tenth Circuit has stated:

> To state a prima facie case for retaliation under Title VII, a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

*Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). The first prong, protected opposition to discrimination, requires showing that the plaintiff had an objectively reasonable, good-faith belief that she was engaging in protected opposition to discrimination. *Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 700-01 (10th Cir. 2014). The third prong, causation,

> can be shown in two ways: by showing that the adverse act bears sufficient temporal proximity to the protected activity, or by showing the existence of facts that suggest that the adverse action occurred because of the protected activity, or a combination of the two.

*Laurent-Workman v. Wormuth*, 54 F.4th 201, 218-19 (4th Cir. 2022). "'Temporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Id.* at 219 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

> Although there is no bright-line rule for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap between notice of the complaint and the adverse employment action is sufficiently long so as to weaken

10

significantly the inference of causation between the two events.

*Id.*

Here, as noted with regard to the discrimination and harassment claims, several of the alleged actions were taken by mere co-workers, not supervisors, and are not attributable to the Defendant. Further, regarding causation, only a few events in the Complaint are alleged to have occurred within two months of the filing or attempted filing of any complaints. The events that are alleged to have so occurred are limited to the following: an Assistant Lab Director refusing to take a formal complaint about the DVD incident, a co-worker yelling at Plaintiff, Plaintiff being ignored by co-workers, HR refusing to file a complaint on her behalf regarding a hostile work environment in August 2021, Plaintiff being denied an opportunity to continue her training in the KBI Lab, being denied a complaint form by HR to report "hostile experiences in the work environment" in November/December 2021, having an annual review recorded, being sent to Fred Pryor training, and the denial of an opportunity to attend a SWAF conference.

The Assistant Lab Director (ALD) allegedly refusing to take a formal complaint about the DVD incident is not a materially adverse action. Plaintiff reported the DVD incident to the ALD, who responded and proposed a solution. Plaintiff does not allege a formal complaint process existed, that such a process was not followed, or why accepting a formal complaint regarding the same concerns would have made any material difference. And it would not have been objectively reasonable to believe that a movie suggestion from a co-worker constituted actionable discrimination, so Plaintiff was not engaged in protected opposition to discrimination.

A co-worker yelling at her is not an action attributable to Defendants, nor is it materially adverse. "Speaking too loudly" or "yell[ing]" may not "manifest good manner or social grace," but "no reasonable jury could find such behavior sufficient to dissuade an employee from reporting illegal discrimination." *McCants v. Correct Care Sols., LLC*, No. 16-2787-DDC, 2018

11

WL 2445157, at *8 (D. Kan. May 31, 2018); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (saying "simple lack of good manners" does not "deter victims of discrimination from complaining to the EEOC").

Likewise, co-workers ignoring her is also not an action attributable to Defendants. Further, even if it was, receiving the "cold shoulder," the "silent treatment," or being "shun[ned]" by coworkers does not constitute a materially adverse employment action. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010).

Regarding HR refusing to file a complaint on her behalf regarding a hostile work environment in August 2021, Plaintiff does not specify what incidents she wanted HR to file a complaint regarding, but the context suggests it was regarding her coworkers yelling at or ignoring her. It is not objectively reasonable to believe that such "simple lack of good manners," *see White*, 548 U.S. at 68, constituted actionable discrimination. So she was not engaged in protected opposition to discrimination. Further, Plaintiff does not allege a materially adverse action, as Plaintiff was able to report matters to HR and was even able to meet with HR in several meetings. Plaintiff merely alleges that HR refused to report an instance presumably to themselves. Plaintiff does not allege why that should be considered material.

With regard to Plaintiff being denied a complaint form by HR to report unspecified "hostile experiences in the work environment," Plaintiff has not alleged any facts about those underlying experiences. She provides only a conclusory allegation that they were "hostile experiences." So the Complaint does not plausibly allege that she was engaging in protected opposition to discrimination. Further, she says she was able to meet "with the Supervisor, HR Director, and Assistant Lab Director" to discuss the matter. Because she was able to meet with and make her concerns known to her supervisors, the denial of a form is not materially adverse.

12

Submitting a form reporting the same concerns would be a mere formality. And she does not allege why using a form to report the same concerns would have made any material difference.

Regarding discontinuing her training in the KBI Lab, denial of a training opportunity is not a materially adverse action unless the plaintiff ties it to a material adversity "such as a hampered ability to perform [her] job or the loss of future advancement opportunities . . . stemming from the denial of . . . training." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 39 (D.D.C. 2019). Here, although Plaintiff indicates the denial of training meant she was not able to conduct certain additional kinds of laboratory tests outside her duties, nothing indicates she was hampered in performing the laboratory tests she regularly performed for her job. She was not asked to do tests she was not trained for. And she has not alleged the denial of training caused a loss of future advancement opportunities. So Plaintiff has not alleged a materially adverse action.

Plaintiff being denied an opportunity to attend a SWAF conference is not a materially adverse action because "Plaintiff does not contend that denial of her request to attend the conference resulted in diminution of her salary or future career prospects." *Befort v. Dep't of Com.*, No. 08-2598-KHV, 2009 WL 10707844, at *16 (D. Kan. Dec. 17, 2009).

Having an annual review recorded is not materially adverse. Being monitored and documented by co-workers does not rise to the level of an action that a reasonable employee would consider materially adverse. *Harris v. Sec'y of U.S. Dep't of Veterans Affs.*, No. 22-2489-HLT, 2024 WL 3010879, at *11 (D. Kan. June 14, 2024) (citing *Lewis v. Wilkie*, 909 F.3d 858, 869 (7th Cir. 2018)). And being monitored and documented by the method of video recording during one particular conversation is similarly not materially adverse.

Being sent to Fred Pryor training is not a materially adverse action. "[R]emedial training is not an adverse employment action" for purposes of a retaliation claim under Title VII

"because it was intended to help" the employee. *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, at *3 (5th Cir. Jan. 5, 2024) (citing *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023) (citing *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021))).

And Plaintiff alleges no other facts to plausibly support an inference of causation for any other events. For example, over two months passed between her EEOC/KHRC complaint and her being placed on a retraining program. And over 6 months passed between that complaint and the termination of her employment. These months-long time frames are "sufficiently long so as to weaken significantly the inference of causation between the two events." *See Laurent-Workman*, 54 F.4th at 219. So Plaintiff has failed to allege any discrete acts of retaliation.

**B. Plaintiff fails to allege facts plausibly suggesting retaliatory harassment.**

While "a discrete claim of retaliation is based on a certain retaliatory act," "a claim of retaliatory harassment is based on the aggregate effect of the actions taken against plaintiff." *Kincaid v. Unified Sch. Dist. No. 500*, 572 F. Supp. 3d 1081, 1090 (D. Kan. 2021). Under this "continuing violation doctrine," the claim must seek "redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act." *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022) (emphasis in original). Several non-exhaustive factors help determine if actions collectively are part of "the same actionable hostile work environment practice," *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016), including whether the "incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1229 (10th Cir. 2022) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)) (alteration in original).

Here, Plaintiff never alleges that several of the alleged actions were perpetrated by "managers" at all, alleging several isolated events by co-workers. And Plaintiff never alleges that

14

the same type of action happened twice. Not only does Plaintiff not allege that she was denied the opportunity to attend more than one conference, for example, but this is an alleged action of an entirely different type than a co-worker yelling at her or her annual review being recorded. So these actions cannot be linked together as one employment practice. What is more, Plaintiff has not identified what "type" of action any of the alleged acts may have in common.

Regarding frequency, many of the alleged actions are spaced out months apart. These actions did not occur "relatively frequently," *see Ford*, 45 F.4th at 1229, for purposes of a retaliation claim. In the context of claims for discrete retaliatory actions, as noted above, "a two-month temporal gap between notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022). So, here, similarly, events spaced out by more than two months are not plausibly motivated by the same retaliatory motive and should not be treated as part of the same retaliatory employment practice.

For these reasons and those stated in section IV(A) above, Plaintiff's claim of "retaliation and retaliatory hostile work environment" should be dismissed for failure to state a claim.

V. **The Court should decline to exercise supplemental jurisdiction over the state law KADEA claim given the absence of a sufficient federal claim.**

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed, and the court should decline to exercise jurisdiction over the state claim. Alternatively, if the Court decides to exercise jurisdiction, it should dismiss the KADEA claim because, for the reasons discussed above, Plaintiff does not allege facts to plausibly support a claim for age discrimination or retaliation.

For these reasons, the Defendant requests that the Plaintiff's claims be dismissed.

15

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Stanley R. Parker, KS No. 10971
Assistant Attorney General/Trial Counsel
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
stanley.parker@ag.ks.gov
(785) 296-6244
(785) 368-8423
Fax: (785) 291-3767
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 16th day of July, 2024, I electronically filed the foregoing with the Court using the CM/ECF system, and a notice of electronic filing was sent via the CM/ECF system to all counsel of record.

                                              */s/ Matthew L. Shoger*
                                              Matthew L. Shoger
                                              Assistant Attorney General

# EXHIBIT A: TIMELINE OF (ALLEGED) EVENTS

| (Alleged) Event | Date | Complaint ¶'s |
|---|---|---|
| Plaintiff hired by KBI | Apr. 29, 2019 | 10 |
| Plaintiff completed custom training program | 2019-2020 | 28, 32 |
| Holiday decorations incident involving co-worker | Dec. 2019 (but not reported to HR until Nov. 10, 2021) | 12 |
| Other instruments updated by co-worker | 2021 | 15, 48(F), 58(E), 67(E), 79(F) |
| Adverse actions began | May 2021 | 11 |
| DVD incident involving co-worker; *Assistant Lab Director refused to take complaint* | *early May 2021* | *16, 57* |
| Co-worker yelled; *reported to Chemistry Supervisor* | *late May 2021* | *17, 47 ("yelling"), 57, 66, 78* |
| Ignored by co-workers | May 24, 2021 | 18, 47 ("exclusion from group"), 57, 66, 78 |
| Plaintiff vomited at work | May 27, 2021 | 19 |
| Plaintiff shaved her head | June 2021 | 20 |
| **300 days before EEOC Charge No. 43751-22** | **July 9, 2021** | **5** |
| *HR refused to file complaint re hostile work environment on her behalf* | *Aug. 19, 2021* | *21-22, 48(K), 58(J), 67(J), 79(K)* |
| *"Negro Virus" comment by co-worker; reported to unidentified persons* | *Oct. 11, 2021* | *24, 47* |
| *Holiday decorations incident from 2019 reported to HR* | *Nov. 10, 2021* | *12* |
| Denied opportunity to continue training in KBI Lab | Nov./Dec. 2021 | 14, 48(A), 79(A) |
| *Denied complaint form by HR* | *Nov./Dec. 2021* | *14* |
| Annual review recorded | Nov./Dec. 2021 | 38, 48(J), 58(I), 67(I), 79(J) |
| Sent to Fred Pryor Training | starting Q1 2022 (and extending into Q2 2022) | 25, 48(A), 48(D), 58(C), 67(C), 79(A), 79(D) |
| *EEOC Charge No. 43751-22* | *May 5, 2022 (amended May 31, 2022)* | *5-6* |
| Denied opportunity to attend SWAF conference | June 2022 | 26, 48(B), 58(A), 67(A), 79(B) |
| First retraining meeting | July 28, 2022 | 31 |

| (Alleged) Event | Date | Complaint ¶'s |
|---|---|---|
| Denied opportunity to apply for investigating position | Aug. 2022 | 27, 48(C), 58(B), 67(B), 79(C) |
| Plaintiff suspects she was recorded | Aug. 2022 | 38 |
| Placed on retraining program | Aug. 1, 2022 | 29-30, 33-35, 48(L)-(N), 58(K)-(M), 67(K)-(M), 79(L)-(N) |
| Specific peer review quotas | no date provided | 13, 48(E), 58(D), 67(D), 79(E) |
| Co-worker communicated respectfully with others | no date provided | 23 |
| Detailed plan required to work from home | no date provided | 36, 48(G), 58(F), 67(F), 79(G) |
| Daily report and meetings | no date provided | 37, 47 ("different daily requirements"), 48(H), 57, 58(G), 66, 67(G), 78, 79(H) |
| Termination of employment after "unfair" performance review | Dec. 5, 2022 | 10, 39-40, 48(I), 48(O), 58(H), 58(N), 67(H), 67(N), 79(I), 79(O) |
| *EEOC Charge No. 44495-23* | *Feb. 9, 2023* | *7* |
| EEOC Right-to-Sue Letter | Oct. 24, 2023 | 8 |
| Initial Complaint | Jan. 22, 2024 | Doc. 1 |