**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DEBORAH (DC) C. BROIL** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | )          **Case No. 2:24-cv-02029** |
| | ) |
| **STATE OF KANSAS, KANSAS BUREAU** | ) |
| **OF INVESTIGATION AND ITS** | )          **WITH JURY TRIAL DEMAND** |
| **REPRESENTATIVES** | ) |
| | ) |
| *Defendant.* | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT STATE OF KANSAS, KANSAS BUREAU OF INVESTIGATION'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff provides the following brief in opposition to Defendant State of Kansas, Kansas Bureau of Investigation's Motion to Dismiss Plaintiff's First Amended Complaint ("Defendants' Motion"). Defendant's Motion under Fed. R. Civ. Pro. 12(b)(6) should be denied as Plaintiff has more than satisfied the pleading requirements of Fed R. Civ. Pro. 8(a). In the event the Court determines that Plaintiff's Complaint does not plead with sufficient specificity facts to support each of her legal theories – a determination Plaintiff contends is not supported by Rule 8(a) - Plaintiff requests the opportunity to file an Amended Complain adding such details that will rectify any such pleading deficiencies.

## I. NATURE OF THE MATTER

Plaintiff is a Black, African American female employed by the KBI as a Forensic Scientist III from 2019 through December 5, 2022. In her First Amended Complaint, filed July 18, 2024, Plaintiff has brought claims for Title VII race, color, and ancestry discrimination and harassment causing a hostile work environment (Count I), Title VII sex discrimination and harassment causing a hostile work environment (Count II), Title VII retaliation and retaliatory hostile work

1

environment (Count IV), and Kansas Age Discrimination in Employment Act against Defendant. (Doc. 22.) Plaintiff's initial Complaint was filed on December 5, 2023. (Doc. 1.)

Defendant seeks to dismiss Plaintiff's First Amended Complaint paragraphs 12, 16, 17, 18, 19, and 20 as well as the entirety of Counts I, II, and III. (Doc. 25.)

## II. STATEMENT OF FACTS

Plaintiff is a Black/African American female.  She is 74 years old.  She was employed by Defendant from April 29, 2019, to December 5, 2022.  She last held the position of Forensic Scientist III at Defendant's Kansas Bureau of Investigation Topeka Forensics Lab. (Doc. 22 at ¶ 1.) Plaintiff was treated less favorably than her colleagues, denied opportunities, and was more closely scrutinized than her colleagues because of her race, sex, color, ancestry, and age. (Doc. 22 at ¶ 2.) Plaintiff also suffered retaliation for her complaints of discrimination and retaliation. (*Id.*) Rules, standards, and regulations were unfairly applied to Plaintiff. This pervasive pattern of continuing discrimination, harassment, and retaliation began in May of 2021 and continued through her termination on December 5, 2022. (*Id.*) This ongoing harassment created a hostile work environment. (*Id.*)

In 2019, Plaintiff's supervisor at the time, Dwain Worley at the time created her original training program, based on Plaintiff's years of experience (more than 13 years) and pursuant to KBI policy. (Doc. 22 at ¶ 19.)  Plaintiff completed the required training, passed the training and testing before receiving her work authorization. (*Id.*)  Worley was approximately aged 59-62 when Plaintiff was hired; he retired the following year in 2020. (*Id.*)

After complaining on numerous occasions about discrimination, harassment, and retaliation, on August 1, 2022, after working several years as a KBI Forensic Scientist III and earning the required work authorization much earlier in her employment, Plaintiff was suddenly

placed on a retraining program, which required extensive review and memorization of training materials that are provided to new Forensic Scientists with no work experience. (Doc. 22 at ¶ 20.) Plaintiff was told that there was no record of her original training, but which there was no dispute had been completed as Plaintiff had received the work authorization earlier in her employment. (*Id*.) For the sole reason that they could not find record of her original training, Defendant told Plaintiff that she was required to complete an extensive retraining program. (*Id*.)

No one who entered the KBI Chemistry Lab with prior work experience, had been put on a retraining program other than Plaintiff, who was the only Black/African employee in the Chemistry Department, based upon what she was told during the first retraining meeting by the Laboratory Director on July 28, 2022. (Doc. 22 at ¶ 22.) The KBI policy specifically states in number six of the KBI Training Program, scientists with prior experience will have a training program written for them that is approved by the supervisor and/or tech lead. (*Id*.) It is only when the experienced scientist fails to satisfactorily complete and pass the training program that was specifically designated for them, that the experienced scientist is required to go back and start the training program from the beginning as if they were a newly graduated from college employees, without experience. (*Id*.)

The Lab Director and the Retraining Team insisted they had to write the Retraining Program only because there was no record of Plaintiff's original training program. (Doc. 22 at ¶ 24.) However, they indicated there had been no specific problem with Plaintiff's job performance and further, they declined to view the records Plaintiff had kept of her initial training and which she offered to provide. (*Id*.)

In the beginning of Plaintiff's retraining program, she was not provided all necessary materials upon which she was examined on the first test.  Other white, younger scientists had

received one-on-one training on some of the topics and had at least been provided all necessary materials. (Doc. 22 at ¶ 21.) The training program schedule was unfair and designed so Plaintiff would fail to complete it within the allotted time period. (*Id*.) For example, the program provided no time to address correspondence and other administrative tasks Plaintiff had as a scientist who had been previously working fulltime, respond to subpoenas for court testimony on completed laboratory analysis, or participate in office meetings. (Doc. 22 at ¶ 25.) When Plaintiff was subpoenaed and prepared for and attended court to testify, no adjustment was made to her retraining schedule. (*Id*.) The retraining program provided for no vacation time, sick time, or inclement weather. Plaintiff was often denigrated when she asked questions concerning areas not directly covered by the training materials. The trainer would sometimes not answer the Plaintiff's questions, stating "I already answered that question, " which required Plaintiff waste additional time searching for the answer. (Doc. 22 at ¶ 26.)

On December 5, 2022, the discrimination and retaliation culminated in her termination after another unfair and inaccurate performance review that stated Plaintiff did not complete the retraining program in a timely manner. (Doc. 22 at ¶ 30.) Plaintiff was terminated based upon her sex (female), her race/ancestry (African American), her color (Black), her age, and as an act of retaliation for having openly opposed acts and practices forbidden by state and federal law. (Doc. 22 at ¶ 31.)

As a direct result of Defendant's unlawful actions, Plaintiff has suffered pecuniary and non-pecuniary losses include but are not necessarily limited to: past wages and benefits, pain and suffering, emotional distress, hair loss, sleep deprivation and interruption, trauma, mental suffering, mental anguish, anxiety, trauma, humiliation, and inconvenience. Plaintiff is seeking an award of monetary damages and equitable relief. (Doc. 22 at ¶ 32.)

### III. QUESTIONS PRESENTED

**A. Plaintiff's Background Fact Paragraphs 10, 16, 17, 18, 19, and 20 should not be dismissed.**

**B. Plaintiff's states a valid discrimination and harassment claim based on race, ancestry, and color.**

**C. Plaintiff's states a valid sex discrimination and harassment claim.**

**D. Plaintiff's states a valid retaliation claim.**

### IV. STANDARD FOR MOTION TO DISMISS

A motion to dismiss for failure to state a cause of action solely tests the adequacy of the complaint.  It assumes the facts pleaded are true and liberally grants to plaintiff all reasonable inferences therefrom.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987).  "The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief."  *Litton v. Maverick Paper Co.*, 354 F.Supp.2d 1209, 1210 (D. Kan. 2005) (citing *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1115 (10th Cir. 1991)); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F3d 1381, 1384 (10th Cir. 1997).

The issue in reviewing the sufficiency of a complaint such as this is not whether the plaintiff will prevail, but only whether she is entitled to offer evidence to support the claims.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984); *Hall v. Bellmon*, 935 F2d 1106, 1110 (10th Cir. 1991).  In this matter, the well-pled facts establish sufficient bases to offer evidence to support Plaintiff's claims.  Therefore, Defendant's motion to dismiss should be overruled on all counts.

Fed. R. Civ. P. 8(a) requires "a short and plaint statement of the claim showing that the pleader is entitled to relief."  The statement need not be factually detailed but it "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  While a plaintiff is not required to precisely state each element of the claim, Rule 8(a) nevertheless requires minimal factual allegations on those material elements that must be proved to recover.  *Hall v. Bellmon*, 935 F2d 1106, 1110 (10th Cir. 1991). Here, Plaintiff has pled sufficient facts to state a claim for Title VII race, color, and ancestry discrimination and harassment causing a hostile work environment, Title VII sex discrimination and harassment causing a hostile work environment, and Title VII retaliation and retaliatory hostile work environment against Defendant.

## V. ARGUMENT

### A. Plaintiff's Background Fact Paragraphs 10, 16, 17, 18, 19, and 20 should not be dismissed.

Defendant improperly seeks the dismissal of several **facts** in the Factual Background Section of Plaintiff's First Amended Complaint for Damages *("Amended Complaint")*, erroneously arguing that Plaintiff failed to exhaust administrative remedies with respect to those facts because they were "claims" outside 300 days of the first Charge filing. *(*Doc. 25, p. 2 referring to Plaintiff's Amended Complaint Doc. 22 at ¶¶ 12, 16-20*)*.

While Defendant is correct that adverse acts occurring more than 300 days before the Charge of Discrimination was filed is not actionable, acts occurring more than 300 days before the charge was filed with the EEOC are still actionable under the theory of a continuing hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002) (citing *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1017 (9th Cir. 2000)). "Because plaintiff's hostile work environment claim includes events that could have occurred within the

filing period, the Court may consider events that contribute to the hostile work environment even if they fall outside the 300-day period." *Brooks v. Unified Gov't of Wyandotte Cnty.*, 2024 U.S. Dist. LEXIS 139264, at *22 (D. Kan. Aug. 6, 2024) (internal brackets omitted).

Plaintiff's Counts I (Race Discrimination and Harassment), II (Sex Discrimination and Harassment), and III (Retaliation and Retaliatory Hostile Work Environment) all include hostile work environment claims, and her Amended Complaint includes events that occurred within the 300-day period, thus, allowing events that occurred outside the 300-day period to be actionable and considered by this Court and Jury.  (Doc. 22 at ¶¶ 46-47, 56-57, 65-66). Specifically, Plaintiff alleges in Count I:

> While Plaintiff was an employee of and/or subject to the direction and control of the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on race and color on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

> Plaintiff was subjected to a hostile work environment based upon her race, color, and nationality that involved racially offensive jokes, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her white colleagues.

(Doc. 22 at ¶¶ 46-47.) Plaintiff alleges in Count II:

> While Plaintiff was an employee of and/or subject to the direction and control of Defendant, Defendant subjected Plaintiff to a hostile and offensive work based upon her sex on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

> Plaintiff was subjected to a hostile work environment because of her female sex that involved sexually offensive DVR content, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her male colleagues.

(Doc. 22 at ¶¶ 56-57.) Plaintiff further alleges in Count III of her Amended Complaint:

> While Plaintiff was an employee of and/or subject to the direction and control of Defendant and based upon Plaintiff's opposition to and complaints of discrimination and retaliation, Defendant subjected Plaintiff to a hostile and offensive work environment on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

> Plaintiff was subjected to a hostile work environment based upon her opposition of protected activity which involved denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her colleagues who had not opposed discrimination.

(Doc. 22 at ¶¶ 65-66.)

Importantly, paragraphs 16, 17, 18, 19, and 20 are facts relevant to the hostile work environment Plaintiff was suffering. The harassment began in May 2021 and continued through Plaintiff's termination on December 5, 2022. (Doc. 22 at ¶ 11.) In fact, paragraph 19, of which Defendant seeks dismissal, alleges, "By May 27, 2021, *the environment was so hostile*, tense, and stressful that Plaintiff vomited at work." (Doc. 22 (emphasis added).) In Paragraph 20, of which Defendant yet again seeks dismissal, Plaintiff alleges, "Plaintiff had several meetings with Rebeka Stanley in HR, during which Plaintiff *reported the unbearably hostile work environment* she was experiencing.) (Doc. 22 (emphasis added).) In Paragraph 21, Plaintiff is referring to the previously described hostile work environment facts (¶¶ 12-20) that she had several meetings with HR, "during which Plaintiff reported the unbearably hostile work environment she was experiencing." (Doc. 22.)

Finally, paragraphs 19 and 20 of Plaintiff's petition are also facts related to the emotional distress Plaintiff suffered, (Doc. 22 at ¶ 19 (Plaintiff vomiting) and ¶ 20 Plaintiff losing so much

hair she had to shave her head), that caused her to report a hostile work environment as alleged in paragraph 22 (Doc. 22 at ¶ 22).

Only fact paragraphs 12 and 16 occurred prior to when the harassment becomes severe and pervasive in May 2021. However, these facts are still appropriately included in Plaintiff's Amended Complaint, because this Court, may consider adverse actions which occurred more than 300 days before filing as background evidence in support of a timely claim if later asked to do so via a summary judgment motion. *Sunderman v. Westar Energy, Inc.*, 307 Fed. Appx. 224, 229 (10th Cir. 2009); *Brooks*, 2024 U.S. Dist. LEXIS 139264, at *20 (holding prior adverse acts (300+ days prior to charge filing) were not actionable but plaintiff may use "prior events as background evidence in support of her timely claims."); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."). Notably, the inclusion of those highly relevant facts are also appropriate in Plaintiff's Amended Complaint as juries may consider background evidence of adverse actions to determine the Defendant's liability. *See Cassell v. SkyWest, Inc.*, 654 F. Supp. 3d 1222, 1239 (D. Utah 2023) (refusing to exclude evidence of one-year-old adverse actions and allowing plaintiff to use them as background evidence in determining liability; recommending jury instruction stating jury may not hold defendant liable for prior actions to avoid jury confusion); *Fresquez v. BNSF Ry. Co.*, 54 F.4th 1280, 1293 (10th Cir. 2022) (affirming district court's determination that Plaintiff could consider prior acts as background evidence in jury trial).

Ultimately, paragraphs 17-20 Defendant seeks to dismiss are facts related to Plaintiff's ongoing, continuing hostile work environment, and none constitute adverse actions outside the 300-day period. On Background Fact paragraphs 12 and 16 are outside the continuing, hostile work environment. However, they still are still relevant and appropriately included in Plaintiff's

Amended Complaint. As such, Defendant's Motion to Dismissed Amended Complaint paragraphs 12, 16, 17, 18, 19, and 20 should be denied.

**B.  Plaintiff's complaint alleges a valid discrimination and harassment claim based on race, ancestry, and color and should not be dismissed.**

To survive a motion to dismiss, a plaintiff must merely plead facts sufficient to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Albers v. Bd. of Cnty. Commr's*, 771 F.3d 697, 700 (10th Cir. 2014). At the motion to dismiss stage, the court accepts all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013). The issue in resolving a motion to dismiss is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (1974). In employment cases, the employee may not have many details prior to the discovery phase so a plaintiff is not expected to know all the details related to discriminatory acts and comparators, but the employee plaintiff should provide "at least some relevant information to the make the claims plausible on their face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

> ### 1.  *Plaintiff alleges a valid discrimination claim based on color, ancestry, and race.*

To survive a motion to dismiss her disparate treatment based on race and color claim, Plaintiff must merely allege facts that plausibly allow a fact finder to conclude that: 1) she is a member of a protected class; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action or a hostile work environment; and 4) she was treated less favorably than others not in the protected class. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Plaintiff begins Count I by incorporating all her facts background facts. (Doc. 22 at ¶ 42.) Plaintiff sufficiently pleads facts to establish she was a member of a protected class and she was qualified for the position. Plaintiff states is a Black and African American female, 74 years of age, and qualified for her last position – Forensic Scientist IIII. (*Id. at* ¶¶ 10, 42-43.) Plaintiff had more than 13 years of experience as a forensic scientist. (*Id. at* ¶ 28.) In 2019, Plaintiff's prior supervisor created a training program based upon her extensive prior experience consistent with KBI policy, which Plaintiff completed and passed the related testing prior to receiving her work authorization. (*Id. at* ¶¶ 28, 32.) Then, Plaintiff worked as a Forensic Scientist III until August 2022 without any specific issues with her job performance. (*Id.* at ¶ 32.)

Plaintiff alleges many adverse employment actions and a hostile work environment, and provides the following specific examples:

A. Her regular KBI training was suspended, while her similarly situated white colleagues were permitted to continue their training;

B. She was denied the opportunity to attend conferences, while her similarly situated white colleagues were permitted to attend;

C. She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated white colleagues were permitted to apply;

D. She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the white, male who harassed her was not sent to any training;

E. She was required to meet specific peer review quotas under different conditions than her similarly situated white colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

F. Her equipment was not updated with the shorter methods uploaded to her similarly situated white colleagues' equipment which limited her ability to complete her tasks more quickly and with greater efficiency;

    G.  She was prohibited from working from home without a detailed plan, but her similarly situated white colleagues were allowed to work from home without providing any plan;

    H.  She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated white colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

    I.  Her performance was unfairly evaluated and less favorably evaluated than similarly situated white colleagues;

    J.  Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated white colleagues were not recorded;

    K.  HR refused to file complaints on her behalf when she complained in violation of their policy;

    L.  She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated white colleagues were not placed on a similar retraining program;

    M.  During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated white colleagues during training;

    N.  Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

    O.  Her employment was wrongfully terminated because of her race, color, and nationality.

(*Id*. at ¶¶ 48, 48A-O.) Paragraph 48A-J and 48L clearly set out adverse acts and allege she was

treated less favorably than her *white* colleagues and sets out specifically *how* she was treated

differently. (*Id*.) Paragraph 48K alleges that Defendant violated its own policy when it refused to

file complaints on her behalf. (*Id*.) Paragraph 48N sets out 12 facts in support of why the training

schedule and calendar was unfair and designed so Plaintiff would fail. Further, Plaintiff alleges,

> [t]he training program schedule was unfair and designed so Plaintiff would fail to complete it within the allotted time period. For example, the program provided no time to address correspondence and other administrative tasks Plaintiff had as a scientist who had been previously working fulltime, respond to subpoenas for court testimony on completed laboratory analysis, or participate in office meetings. When Plaintiff was subpoenaed and prepared for and attended court to testify, no adjustment was made to her retraining schedule. The retraining program provided for no vacation time, sick time, or inclement weather. The Chemistry Supervisor, Knox, emailed information and provided a textbook she used during her training to answer questions in the retraining module since materials were not provided to Plaintiff that covered all of the topics being tested. The trainer, Chris Riddle, was copied on the email and the textbook provided was used to complete the assignment. Plaintiff submitted the completed assignment to Riddle, but he would not accept the work after being copied on the email. Plaintiff was required to re-do the assignment, which required more time, putting Plaintiff further behind schedule. Additionally, some days the trainer left work early and worked from home delaying Plaintiff's progress as she had to wait until the trainer returned to work so she could get her questions answered and continue with training.
>
> Plaintiff was often denigrated when she asked questions concerning areas not directly covered by the training materials. The trainer would sometimes not answer the Plaintiff's questions, stating "I already answered that question," which required Plaintiff waste additional time searching for the answer.

(*Id.* at ¶¶ 33-34.) Plaintiff alleges that Lab Director and the Retraining Team insisted they had to write the Retraining Program **only** because there was no record of Plaintiff's original training program, but they declined to view the records Plaintiff had kept of her initial training and which she offered to provide. (*Id.* at ¶ 33 (emphasis added).) Plaintiff alleges that on "December 5, 2022, the discrimination and retaliation culminated in her termination after another unfair and inaccurate performance review that stated Plaintiff did not complete the retraining program in a timely manner." (*Id.* at ¶ 39.) Plaintiff further states that she was terminated based upon her sex (female), her race/ancestry (African American), her color (Black), her age, and as an act of retaliation for having openly opposed acts and practices forbidden by state and federal law. (*Id.* at ¶¶ 40, 48O.) Plaintiff notes that, "[s]he was placed on a retraining program in violation of policy and despite

not having any performance issues, while her similarly situated white colleagues were not placed on a similar retraining program." (*Id*. at ¶ 48L.) Plaintiff further alleges that, "[d]uring Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated white colleagues during training." (*Id*. at ¶ 48M.) Plaintiff's Amended Complaint states, "Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment[.]" (*Id*. at ¶ 48N.)

As set forth above, Plaintiff provided significant facts as to why the training plan was unfair, discriminatory, retaliatory, and designed for her to fail and those reasons included allegations of situations in which her white colleagues were treated better. (*Id*. at ¶¶ 29-40, 48A-O) (emphasis added).)

### 2. *Plaintiff alleges a valid hostile work environment claim based on color, ancestry, and race.*

To survive a motion to dismiss her hostile work environment claim based on race and color, Plaintiff must allege facts that plausibly allow a fact finder to conclude that 1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on race, color or ancestry; and 4) the harassment was sufficiently severe or pervasive it altered a term, condition, or privilege of Plaintiff's employment and created an abusive work environment. *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1249 (10th Cir. 2024). Hostile work environment claims are created by the "cumulative effect of individual acts" involving "repeated conduct" that "occurs over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v Morgan, 536 U.S. 101, 115 (2002)).  "It is not enough that a particular plaintiff deems the work

environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1250 (10th Cir. 2024)(internal citation and quotation omitted). "Conduct that alters terms, conditions, or privileges of employment' is not necessarily limited to instances of economic or tangible discrimination; it also includes requiring people to work in a discriminatorily hostile or abusive environment." *Id.*

In Section B.1., *supra,* Plaintiff demonstrates she sufficiently pled facts showing is a member of a protected class and was qualified for her position. Plaintiff alleges she was subjected to unwelcome harassment that was sufficiently severe or pervasive that it altered a term, condition, or privilege of Plaintiff's employment and created a hostile work environment based upon her race, color, and nationality in Count I.  Count I provides:

> While Plaintiff was an employee of and/or subject to the direction and control of the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on race and color on a continuous basis and which constituted a continuing pattern ***of unwelcome harassment***, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

> Plaintiff was subjected to a hostile work environment based upon her race, color, and nationality that involved racially offensive jokes, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her white colleagues.

> Because of her race, color, and ancestry, Plaintiff suffered adverse employment actions ***and a hostile work environment***, which included but is not limited to the following:

>> A.     Her regular KBI training was suspended, while her similarly situated white colleagues were permitted to continue their training;

>> B.     She was denied the opportunity to attend conferences, while her similarly situated white colleagues were permitted to attend;

C.      She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated white colleagues were permitted to apply;

D.      She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the white, male who harassed her was not sent to any training;

E.      She was required to meet specific peer review quotas under different conditions than her similarly situated white colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

F.      Her equipment was not updated with the shorter methods uploaded to her similarly situated white colleagues' equipment which limited her ability to complete her tasks more quickly and with greater efficiency;

G.      She was prohibited from working from home without a detailed plan, but her similarly situated white colleagues were allowed to work from home without providing any plan;

H.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated white colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

I.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated white colleagues;

J.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated white colleagues were not recorded;

K.      HR refused to file complaints on her behalf when she complained in violation of their policy;

L.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated white colleagues were not placed on a similar retraining program;

M.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated white colleagues during training;

N.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to

testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

O.    Her employment was wrongfully terminated because of her race, color, and nationality.

(Doc. 22 at ¶¶ 46-48O.) Plaintiff's Amended Complaint provides additional facts and details establishing that the harassment and hostile work environment as severe and pervasive in Amended Complaint Paragraphs 13-40. (Doc. 22.)

For these reasons, Defendant's Motion to Dismiss Count I should be denied.

**C.    <u>Plaintiff states a valid sex discrimination and harassment claim.</u>**

*1.    Plaintiff alleges a valid discrimination claim based on sex.*

To survive a motion to dismiss her disparate treatment based on sex, Plaintiff must merely allege facts that plausibly allow a fact finder to conclude that: 1) she is a member of a protected class; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action or a hostile work environment; and 4) she was treated less favorably than others not in the protected class. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Plaintiff begins Count II by incorporating all of her facts background facts. (Doc. 22 at ¶ 52.) Plaintiff sufficiently pleads facts to establish she was a member of a protected class Plaintiff states is a Black and African American female, 74 years of age, and qualified for her last position – Forensic Scientist IIII. (*Id. at* ¶¶ 10, 42-43, 53.) In Section B.1., *supra,* Plaintiff demonstrates she sufficiently pled facts showing she was qualified for her position.

Plaintiff alleges many adverse employment actions and a hostile work environment based upon her sex and provides the following specific examples:

A.    She was denied the opportunity to attend conferences, while her similarly situated male colleagues were permitted to attend;

B.     She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated male colleagues were permitted to apply;

C.     She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the male employee who harassed her was not sent to any training;

D.     She was required to meet specific peer review quotas under different conditions than her similarly situated male colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

E.     Her equipment was not updated with the shorter methods uploaded to her similarly situated male colleagues' equipment, which limited her ability to complete her tasks more quickly and with greater efficiency, and her male colleague refused to update her equipment without consequence;

F.     She was prohibited from working from home without a detailed plan, but her similarly situated male colleagues were allowed to work from home without providing any plan;

G.     She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated male colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

H.     Her performance was unfairly evaluated and less favorably evaluated than similarly situated male colleagues;

I.     Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated male colleagues were not recorded;

J.     HR refused to file complaints on her behalf when she complained in violation of their policy;

K.     She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated male colleagues were not placed on a similar retraining program;

L.     During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated male colleagues during training;

M.     Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks,

holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

N.   Her employment was wrongfully terminated because of her sex.

(*Id*. at ¶¶ 58, 58A-N.) Paragraph 58A-I and 58K-L clearly set out adverse acts and allege she was treated less favorably than her male colleagues and sets out specifically *how* she was treated differently. (*Id*.) Paragraph 58J alleges that Defendant violated its own policy when it refused to file complaints on her behalf. (*Id*.) Paragraph 458M sets out 12 facts in support of why the training schedule and calendar was unfair and designed so Plaintiff would fail. Further, Plaintiff alleges,

> [t]he training program schedule was unfair and designed so Plaintiff would fail to complete it within the allotted time period. For example, the program provided no time to address correspondence and other administrative tasks Plaintiff had as a scientist who had been previously working fulltime, respond to subpoenas for court testimony on completed laboratory analysis, or participate in office meetings. When Plaintiff was subpoenaed and prepared for and attended court to testify, no adjustment was made to her retraining schedule.  The retraining program provided for no vacation time, sick time, or inclement weather. The Chemistry Supervisor, Knox, emailed information and provided a textbook she used during her training to answer questions in the retraining module since materials were not provided to Plaintiff that covered all of the topics being tested. The trainer, Chris Riddle, was copied on the email and the textbook provided was used to complete the assignment. Plaintiff submitted the completed assignment to Riddle, but he would not accept the work after being copied on the email. Plaintiff was required to re-do the assignment, which required more time, putting Plaintiff further behind schedule. Additionally, some days the trainer left work early and worked from home delaying Plaintiff's progress as she had to wait until the trainer returned to work so she could get her questions answered and continue with training.

> Plaintiff was often denigrated when she asked questions concerning areas not directly covered by the training materials. The trainer would sometimes not answer the Plaintiff's questions, stating "I already answered that question," which required Plaintiff waste additional time searching for the answer.

(*Id*. at ¶¶ 33-34.) Plaintiff alleges that Lab Director and the Retraining Team insisted they had to write the Retraining Program **only** because there was no record of Plaintiff's original training program, but they declined to view the records Plaintiff had kept of her initial training and which

she offered to provide. (*Id.* at ¶ 33 (emphasis added).) Plaintiff alleges that on "December 5, 2022, the discrimination and retaliation culminated in her termination after another unfair and inaccurate performance review that stated Plaintiff did not complete the retraining program in a timely manner." (*Id.* at ¶ 39.) Plaintiff further states that she was terminated based upon her sex (female), her race/ancestry (African American), her color (Black), her age, and as an act of retaliation for having openly opposed acts and practices forbidden by state and federal law. (*Id.* at ¶¶ 40, 48O.) Plaintiff notes that, "[s]he was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated white colleagues were not placed on a similar retraining program." (*Id.* at ¶ 58K.) Plaintiff further alleges that, "[d]uring Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated male colleagues during training." (*Id.* at ¶ 58L.) Plaintiff's Amended Complaint states, "Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment[.]" (*Id.* at ¶ 58M.)

As set forth in this section above and in Section B.1, *supra,* Plaintiff provided significant facts as to why the training plan was unfair, discriminatory, retaliatory, and designed for her to fail and those reasons included allegations of situations in which her male colleagues were treated better. (*Id.* at ¶¶ 29-40, 58A-N.)

### 2.   *Plaintiff alleges a valid hostile work environment claim based on sex.*

To survive a motion to dismiss her hostile work environment claim based upon sex, Plaintiff must allege facts that plausibly allow a fact finder to conclude that 1) she is a member of

a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on sex; and 4) the harassment was sufficiently severe or pervasive it altered a term, condition, or privilege of Plaintiff's employment and created an abusive work environment. *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1249 (10th Cir. 2024). Hostile work environment claims are created by the "cumulative effect of individual acts" involving "repeated conduct" that "occurs over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v Morgan, 536 U.S. 101, 115 (2002)). "It is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1250 (10th Cir. 2024)(internal citation and quotation omitted). "Conduct that alters terms, conditions, or privileges of employment' is not necessarily limited to instances of economic or tangible discrimination; it also includes requiring people to work in a discriminatorily hostile or abusive environment." *Id.*

In Section C.1., *supra,* Plaintiff notes her Complaint alleges she is a member of a protected class. Plaintiff alleges she was subjected to unwelcome harassment that was sufficiently severe or pervasive that it altered a term, condition, or privilege of Plaintiff's employment and created a hostile work environment based upon her sex in Count II.  Count II provides:

> While Plaintiff was an employee of and/or subject to the direction and control of the Defendant, the Defendant subjected Plaintiff to a hostile and offensive work based on sex on a continuous basis and which constituted a continuing pattern ***of unwelcome harassment***, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

> Plaintiff was subjected to a hostile work environment because of her female sex that involved sexually offensive DVR content, denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her male colleagues.

Because of her sex, Plaintiff suffered adverse employment actions *and a hostile work environment*, which included but is not limited to the following:

A.      She was denied the opportunity to attend conferences, while her similarly situated male colleagues were permitted to attend;

B.      She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated male colleagues were permitted to apply;

C.      She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the male employee who harassed her was not sent to any training;

D.      She was required to meet specific peer review quotas under different conditions than her similarly situated male colleagues, including being limited to being peer reviewed by three chemists each with different requirements;

E.      Her equipment was not updated with the shorter methods uploaded to her similarly situated male colleagues' equipment, which limited her ability to complete her tasks more quickly and with greater efficiency, and her male colleague refused to update her equipment without consequence;

F.      She was prohibited from working from home without a detailed plan, but her similarly situated male colleagues were allowed to work from home without providing any plan;

G.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated male colleagues were not required to submit these daily accounts when working from home or have daily meetings during their training;

H.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated male colleagues;

I.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated male colleagues were not recorded;

J.      HR refused to file complaints on her behalf when she complained in violation of their policy;

K.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated male colleagues were not placed on a similar retraining program;

L. During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated male colleagues during training;

M. Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

N. Her employment was wrongfully terminated because of her sex.

(*Id*. at ¶¶ 58, 58A-N.)   Plaintiff's Amended Complaint provides additional facts and details establishing that the harassment and hostile work environment as severe and pervasive in Amended Complaint Paragraphs 13-40. (Doc. 22.)

For these reasons, Defendant's Motion to Dismiss Count II should be denied.

### D. Plaintiff states a valid retaliation claim.

#### 1. *Plaintiff alleges a valid discrimination claim based on retaliation.*

To allege a prima facie case for retaliation under Title VII, Plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action." *Khalik*, 671 F.3d at 1193.

Plaintiff begins Count III by incorporating her facts background facts and the facts of the previous Counts. (Doc. 22 at ¶ 62.)   Plaintiff sufficiently pleads facts to establish she engaged in protected opposition to discrimination.

Plaintiff engaged in protected opposition to sex, race, color, and nationality and opposition to retaliation because of those complaints, which she made through internal complaints as well has her Charges of Discrimination referenced herein. A reasonable employee would have found the actions and treatment challenged to be materially adverse.

Plaintiff was treated lass favorably than similarly situated colleagues who had not reported discrimination and retaliation as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 67A-67N below.

(Doc. 22 at ¶¶ 63-64.) Additionally, she alleges the following concerning her protected activity:

> 19.     By May 27, 2021, the environment was so hostile, tense, and stressful that Plaintiff vomited at work.

> 20.     The work environment continued to grow more hostile. By June 2021, Plaintiff had lost so much hair due to the stress and hostility that she had to shave her head.

> **21.     Plaintiff had several meetings with Rebeka Stanley in HR, during which Plaintiff reported the unbearably hostile work environment she was experiencing.**

> **22.     On or about August 19, 2021, Stanley refused to file a complaint on Plaintiff's behalf.**

> **24.**     On or about October 11, 2021, Schiefereke approached Plaintiff while she was setting up a sequence on Hp-4 instrument and told her that the Chinese Wuhan Lab was making a Negro Virus.  He then repeated the statement when she was silent - "They are making a Negro Virus." Schiefereke continued to laugh and when a female colleague, Bianca Bailey, came in, he repeated, "They are making a Negro Virus."  Schiefereke said, "You know, the virus that will cause your arms and legs to rot."  Bailey responded, "Oh, necrotic?"  They both laughed. **Plaintiff reported this discriminatory and harassing conduct.**

**(Doc. 22 at ¶¶** 19-24). Paragraphs 5 through 7 also set out the dates upon which Plaintiff filed a

Charge of Discrimination. (Doc. 22.)

Plaintiff alleges that after Plaintiff's protected opposition to discrimination and retaliation,

Plaintiff suffered adverse employment actions and a hostile work environment, which included but

is not limited to the following:

> A.     She was denied the opportunity to attend conferences, while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to attend;

> B.     She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to apply;

> C.     She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of

hostility, while the white, male who harassed her and not opposed discrimination and retaliation was not sent to any training;

D.      She was required to meet specific peer review quotas under different conditions than her similarly situated colleagues, who had not opposed discrimination and retaliation, including being limited to being peer reviewed by three chemists each with different requirements;

E.      Her equipment was not updated with the shorter methods uploaded to the equipment of her similarly situated colleagues, who had not opposed discrimination and retaliation, which limited her ability to complete her tasks more quickly and with greater efficiency;

F.      She was prohibited from working from home without a detailed plan, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were allowed to work from home without providing any plan;

G.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were not required to submit these daily accounts when working from home or have daily meetings during their training;

H.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated colleagues, who had not opposed discrimination and retaliation;

I.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated colleagues, who had not opposed discrimination and retaliation, were not recorded;

J.      HR refused to file complaints on her behalf when she complained in violation of their policy;

K.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated colleagues, who had not opposed discrimination and retaliation, were not placed on a similar retraining program;

L.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated colleagues, who had not opposed discrimination and retaliation, during training;

M.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to

testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

N.      Her employment was wrongfully terminated in retaliation for her complaints of discrimination and retaliation.

(Doc. 22 at ¶¶ 67, 67A-67N.)

Additionally, Plaintiff alleges that After Plaintiff's regular training was discontinued in 2021, she was sent to Fred Pryor Training for the first and second quarter of 2022 instead of receiving the work-specific training her colleagues received. (Doc. 22 at ¶25.) In August 2022, Plaintiff was denied the opportunity to seek the crime scene investigating position despite her years of experience investigating crime scenes. (Doc. 22 at ¶27.) As set forth in this section above and in Section B.1, *supra*, Plaintiff provided significant facts as to why the training plan was unfair, discriminatory, retaliatory, and designed for her to fail and those reasons included allegations of situations in which her male colleagues were treated better. (*Id*. at ¶¶ 29-40, 67A-N.)

Plaintiff alleges sufficient facts supporting a casual connection given the timing, violations of policy, and disparate treatment she received in comparison to colleagues who had not engaged in protected activity. (*Id*. at ¶¶ 15-40, 62-70.)

### 2.  Plaintiff's alleges a valid retaliatory hostile work environment claim.

To survive a motion to dismiss her hostile work environment claim based upon engaging in protected, Plaintiff must allege facts that plausibly allow a fact finder to conclude that 1) she engaged in protected activity; 2) she was subjected to unwelcome harassment; 3) the harassment was based upon protected activity; and 4) the harassment was sufficiently severe or pervasive it altered a term, condition, or privilege of Plaintiff's employment and created an abusive work environment. *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1249 (10th Cir. 2024). Hostile work environment claims are created by the "cumulative effect of individual acts" involving

"repeated conduct" that "occurs over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v Morgan, 536 U.S. 101, 115 (2002)).  "It is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Young v Colorado Dept. of Corrections*, 94 F.4th 1242, 1250 (10th Cir. 2024)(internal citation and quotation omitted). "Conduct that alters terms, conditions, or privileges of employment' is not necessarily limited to instances of economic or tangible discrimination; it also includes requiring people to work in a discriminatorily hostile or abusive environment." *Id.*

In Section D.1., *supra,* Plaintiff notes her Complaint alleges engaged in protected activity. Plaintiff alleges she was subjected to unwelcome harassment that was sufficiently severe or pervasive that it altered a term, condition, or privilege of Plaintiff's employment and created a hostile work environment based upon her protected in Count III.  Count III provides:

64.   Plaintiff was treated lass favorably than similarly situated colleagues who had not reported discrimination and retaliation as set forth in greater detail in the Factual Background of the Complaint and in Paragraphs 67A-67N below.

65.   While Plaintiff was an employee of and/or subject to the direction and control of Defendant and based upon Plaintiff's opposition to and complaints of discrimination and retaliation, Defendant subjected Plaintiff to a hostile and offensive work environment on a continuous basis and which constituted a continuing pattern of unwelcome harassment, which she found, which a reasonable person would find to be offensive, and which altered terms, privileges, and/or conditions of her employment.

66.   Plaintiff was subjected to a hostile work environment based upon her opposition of protected activity which involved denigration, yelling, hostility, disrespectful comments, exclusion from group, different application of policies, different daily requirements, imposition of different standards, and treatment as though she was unintelligent and undeserving of being treated with the respect provided to her colleagues who had not opposed discrimination.

67.   As a result of and after Plaintiff's protected opposition to discrimination and retaliation, Plaintiff suffered adverse employment actions and a hostile work environment, which included but is not limited to the following:

A.      She was denied the opportunity to attend conferences, while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to attend;

B.      She was prohibited from applying of the crime scene investigating despite many years of experience investigating crime scenes while her similarly situated colleagues, who had not opposed discrimination and retaliation, were permitted to apply;

C.      She was sent to Fred Pryor training to allegedly obtain "soft skills" to better communicate in the workplace because of her complaints of hostility, while the white, male who harassed her and not opposed discrimination and retaliation was not sent to any training;

D.      She was required to meet specific peer review quotas under different conditions than her similarly situated colleagues, who had not opposed discrimination and retaliation, including being limited to being peer reviewed by three chemists each with different requirements;

E.      Her equipment was not updated with the shorter methods uploaded to the equipment of her similarly situated colleagues, who had not opposed discrimination and retaliation, which limited her ability to complete her tasks more quickly and with greater efficiency;

F.      She was prohibited from working from home without a detailed plan, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were allowed to work from home without providing any plan;

G.      She was required to submit a daily account of everything she had done and subjected to daily meetings with her supervisor, but her similarly situated colleagues, who had not opposed discrimination and retaliation, were not required to submit these daily accounts when working from home or have daily meetings during their training;

H.      Her performance was unfairly evaluated and less favorably evaluated than similarly situated colleagues, who had not opposed discrimination and retaliation;

I.      Her review was recorded but she was refused a copy of the recording, while the reviews of her similarly situated colleagues, who had not opposed discrimination and retaliation, were not recorded;

J.      HR refused to file complaints on her behalf when she complained in violation of their policy;

K.      She was placed on a retraining program in violation of policy and despite not having any performance issues, while her similarly situated

colleagues, who had not opposed discrimination and retaliation, were not placed on a similar retraining program;

L.      During Plaintiff's retraining she was not provided the support, resources, assistance, the ability to have questions answered, and materials provided to her similarly situated colleagues, who had not opposed discrimination and retaliation, during training;

M.      Her retraining schedule/calendar was unfair and did not consider administrative task requirements, new daily meetings, daily lists of tasks, holiday time, vacation time, sick time, inclement weather, time preparing to testify, time spent testifying in court, trainer unavailability, or the extensive stress and distress Plaintiff was experiencing on account of her ongoing hostile work environment; and

N.      Her employment was wrongfully terminated in retaliation for her complaints of discrimination and retaliation.

(*Id*. at ¶¶ 64-67N.)   Plaintiff's Amended Complaint provides additional facts and details establishing that the harassment and hostile work environment as severe and pervasive in Amended Complaint Paragraphs 13-40. (Doc. 22.)

For these reasons, Defendant's Motion to Dismiss Count III should be denied.

**E.   <u>If this Court determines that Plaintiff needs to provide more detail or additional facts to support her claims, Plaintiff seeks 30 days to file a Second Amended Complaint.</u>**

If this Court determines that Plaintiff has failed to provide sufficient detailed facts to support her claims, Plaintiff respectfully requests at least 21 days to file a Second Amended Complaint and provide any additional details this Court would like to see including the specific names, job titles, years of experience, ages, employment history, and/or additional demographic information for each similarly situated colleague who was treated more favorably than Plaintiff for each allegation in this Complaint.

## V.    CONCLUSION

WHEREFORE, Plaintiff respectfully submits that Defendant's Motion should be DENIED in its entirety, and respectfully requests the opportunity to amend her Complaint should more specificity be required prior to dismissal of any of her claims.

**BRATCHER GOCKEL LAW, L.C.**

By      */s/Erin N. Vernon*
Erin N. Vernon, Mo. Bar No.:  64590
Lynne Jaben Bratcher, Mo. Bar No.:  31203
4014 B South Lynn Court
Independence, MO  64055
Ph: (816) 221-1614
Fax: (816) 421-5910
E-Mail:  erin@bgklawyers.com
                lynne@bgklawyers.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August 2024 a copy of the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system to all counsel of record.

*/s/ Erin N. Vernon*
ATTORNEY FOR PLAINTIFF