## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DEBORAH C. BROIL,

                   **Plaintiff**,

v.

KANSAS BUREAU OF
INVESTIGATION,

                   **Defendant**.

Case No. 24-2029-DDC-RES

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Deborah C. Broil alleges that her employer, defendant Kansas Bureau of

Investigation, unlawfully discriminated against her based on her race, sex, and age.  Before the

court is defendant's Motion to Dismiss (Doc. 25).  Plaintiff filed a Response.  Doc. 35.[1]  And

---

[1]     As defendant notes, Doc. 36 at 3, plaintiff's brief consists of 30 pages.  *See* Doc. 35.  Our local
rules require that "[p]rincipal briefs in support of, or in response to . . . motions . . . must not exceed 15
pages[.]"  D. Kan. Rule 7.1(d)(3) (setting page limits for briefs that aren't discovery-related motions,
summary judgment motions, or class certification motions).  The local rules allow parties to request leave
to exceed these default page limits.  *See* D. Kan. Rule 7.1(d)(4).  But plaintiff didn't ask to exceed the
page limit.  She just filed her brief.  And this isn't the first time that plaintiff's counsel has violated local
rules.  *See* Doc. 34 (noting plaintiff's failure to comply with D. Kan. Rule 6.1(a)).

      The court could strike plaintiff's filing on this basis alone.  *See Blaurock v. Kansas*, No. 15-cv-
03274-DDC, 2016 WL 7157581, at *4 (D. Kan. Dec. 8, 2016) ("Because the court did not grant petitioner
leave to file a brief over the page limit, the court may strike petitioner's brief in its entirety."); *United
States v. Gomez*, No. 13-cv-0287 WJ/SMV, 2014 WL 12796932, at *2 (D.N.M. Mar. 13, 2014) (striking
defendant's response brief for failing to comply with local rules' page limit).  But striking plaintiff's
Response would impose a severe sanction on plaintiff if the court didn't allow her to file another
Response.  And allowing plaintiff to file another Response would necessitate allowing defendant to file
another Reply.  Rule 1's instruction—to apply the rules "to secure the just, speedy, and inexpensive"
resolution of this action—suggests that sending plaintiff back to the drawing board needlessly would
prolong this case.  Fed. R. Civ. P. 1.  So, the court reluctantly accepts plaintiff's brief.  But the court
leaves plaintiff with this reminder:  The local rules aren't suggestions.  They are rules.

defendant replied.  Doc. 36.  The court grants in part and denies in part defendant's Motion to Dismiss (Doc. 25).

## I.        Background

The following facts come from plaintiff's Amended Complaint (Doc. 22).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff[], and draw[s] all reasonable inferences from the facts in favor of Plaintiff[]."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

In the Amended Complaint's words, plaintiff is a Black, African American female.  Doc. 22 at 2, 3 (Am. Compl. ¶¶ 3, 10).  Defendant employed plaintiff from April 2019 to December 2022.  *Id.* at 3–4 (Am. Compl. ¶ 10).  The most recent title that plaintiff held was "Forensic Scientist III."  *Id.*

### *Interactions with Coworker*

Several of plaintiff's allegations involve one of defendant's employees, Jim Schiefereke.  Doc. 22 at 4, 5–6 (Am. Compl. ¶¶ 12, 15–18, 23–24).  The Amended Complaint doesn't allege Schiefereke's job title.  *See generally id.*  But it alleges that Schiefereke was in charge of maintaining "all Chemistry Department instruments[.]"  *Id*. at 6 (Am. Compl. ¶ 17).  Here are the alleged incidents involving Schiefereke.

*First*, in December 2019, Schierfeke instructed a female employee, Bianca Bailey, to display the book titled "Elvis Presley: The Last 24 Hours" to humiliate plaintiff because of the way that Elvis died—alone in his bathroom, unclothed, after months of constipation.  *Id.* at 4 (Am. Compl. ¶ 12).  Plaintiff emailed HR about this event in November 2021.  *Id.*

*Second*, at some point in 2021, plaintiff asked Schiefereke to install "a shorter method on her instrument . . . to shorten her instrument time" and allow her to "finish her work" more quickly.  *Id.* at 5 (Am. Compl. ¶ 15).  Schiefereke refused.  *Id.*  He told plaintiff that she would

have to write the new method, even though other employees had already written the update that plaintiff had requested. *Id.*

*Third*, in May 2021, Schiefereke left "a DVD movie" on plaintiff's desk. *Id.* (Am. Compl. ¶ 16). On the DVD, Schiefereke left a sticky note, which said, "I forgot to rewind Jackpot. Sorry, Jim." *Id.* Plaintiff alleges that the "DVD movie contained sexual scenes that were offensive to" her. *Id.* Plaintiff reported this incident to the assistant lab director. *Id.* The assistant lab director told plaintiff to communicate directly to Schiefereke that she didn't like that kind of movie but "refused to take a complaint" from plaintiff. *Id.*

*Fourth*, also in May 2021, plaintiff had an altercation with Schiefereke. *Id.* at 5–6 (Am. Compl. ¶ 17). Plaintiff and Schiefereke allegedly shared a laboratory device. *Id.* And "Schiefereke yelled at [p]laintiff that he would use whatever instrument he wants and will not ask to use an instrument." *Id.* Plaintiff alleges that Schiefereke then threatened her that he would never again help with repairs if she asked him to get off of the device. *Id.* The same day this event occurred, plaintiff reported this incident to the chemistry supervisor. *Id.* When plaintiff returned to work after this altercation, Schiefereke and another employee, Bailey, "completely ignored" plaintiff. *Id.* at 6 (Am. Compl. ¶ 18).

Plaintiff alleges that after this fourth incident with Schiefereke, the workplace environment became "so hostile, tense, and stressful" that plaintiff vomited at work. *Id.* (Am. Compl. ¶ 19). Plaintiff lost most of her hair because of this stress and eventually shaved her head. *Id.* (Am. Compl. ¶ 20). Plaintiff also alleges that she met with an employee in defendant's HR department several times. *Id.* (Am. Compl. ¶ 21). In those meetings, she reported that her work environment was "unbearably hostile[.]" *Id.* According to plaintiff, the HR employee "refused to file a complaint" on plaintiff's behalf on August 19, 2021. *Id.* (Am. Compl. ¶ 22).

3

*Fifth*, in October 2021, Schiefereke told plaintiff that "the Chinese Wuhan Lab was making a Negro Virus." *Id.* (Am. Compl. ¶ 24). He then repeated some variation of that "joke" two more times and laughed with another employee, Bailey, who was nearby. *Id.*

In addition to these tense interactions with Schierfeke, plaintiff alleges a series of issues related to the training that defendant offered or required. The court recounts these allegations, next.

### *Training and Retraining*

In late 2021, defendant "denied" plaintiff "the opportunity to continue her training in the KBI lab[.]" *Id.* at 4 (Am. Compl. ¶ 14). Plaintiff reported this to someone in the HR department. *See id.* But HR wouldn't give plaintiff a complaint form to submit a written complaint about the work environment. *Id.* Plaintiff alleges that defendant allowed two of plaintiff's younger, white colleagues to continue their training. *Id.* at 4–5 (Am. Compl. ¶ 14). Defendant gave these employees additional training on a series of topics, while simultaneously denying plaintiff's requests to receive the same training. *Id.* Similarly, defendant allowed plaintiff's younger, white colleagues to attend a conference in Las Vegas in June 2022. *Id.* at 7 (Am. Compl. ¶ 26). But defendant didn't allow plaintiff to attend the same conference. *Id.* Defendant also wouldn't let plaintiff apply for a crime scene investigating position, even though plaintiff had "years of experience investigating crime scenes." *Id.* (Am. Compl. ¶ 27).

For the first and second quarter of 2022, defendant assigned plaintiff training on "soft skills," instead of "work-specific training her colleagues received." *Id.* at 7, 11 (Am. Compl. ¶¶ 25, 48.D.). Plaintiff already had completed her original training program. *Id.* at 7 (Am. Compl. ¶ 28). Plaintiff's supervisor at the time created that original training program to reflect plaintiff's more than 13 years of experience. *Id.* After completing this original training program, plaintiff received her work authorization. *Id.*

4

In August 2022, defendant placed plaintiff on a new retraining program. *Id.* (Am. Compl. ¶ 29). This new program "required extensive review and memorization of training materials" that defendant designed for "new Forensic Scientists with no work experience." *Id.* Defendant told plaintiff that she needed to complete this retraining program because "there was no record of her original training[.]" *Id.* But "there was no dispute" that plaintiff had completed the original training. *Id.* And even though plaintiff had records showing that she had completed the original training program, defendant declined to view them. *Id.* at 8 (Am. Compl. ¶ 33).

Defendant never required any other employee with prior experience who worked in the KBI Chemistry Lab to complete the retraining program. *Id.* (Am. Compl. ¶ 31). Defendant's requirement that plaintiff complete retraining also violated the KBI policy, which says "scientists with prior experience will have a training program written for them that is approved by the supervisor and/or tech lead." *Id.*

Plaintiff struggled to complete the retraining program. Defendant didn't give plaintiff all of the materials that she needed for the training program. *Id.* at 7–8 (Am. Compl. ¶ 30). Plaintiff also alleges that the "training program was unfair and designed" so that plaintiff couldn't complete it in the required time period. *Id.* at 8 (Am. Compl. ¶ 34). For instance, the training program "provided no time to address correspondence and other administrative tasks" such as responding to subpoenas. *Id.* at 8–9 (Am. Compl. ¶ 34). And when plaintiff had to go to court, defendant didn't adjust her training schedule. *Id.* In fact, the training schedule didn't include any flexibility for vacation time, sick time, or inclement weather. *Id.*

### *Termination*

In December 2022, defendant gave plaintiff an "unfair and inaccurate performance review[.]" *Id.* at 10 (Am. Compl. ¶ 39). The review asserted that plaintiff "did not complete the retraining program in a timely manner." *Id.* Following this review, defendant fired plaintiff. *Id.*

5

*Procedural History and Lawsuit*

Plaintiff filed a Charge of Discrimination with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC) on May 5, 2022. *Id.* at 2 (Am. Compl. ¶ 5). She amended her original charge on May 31, 2022. *Id.* at 2–3 (Am. Compl. ¶ 6). She filed a second Charge of Discrimination with the KHRC and EEOC on February 9, 2023. *Id.* at 3 (Am. Compl. ¶ 7).

Plaintiff then filed this federal-question action. Her suit asserts claims organized into four counts:

- *Count I*: Race, ancestry, and color discrimination and harassment in violation of Title VII, *id.* at 10–14 (Am. Compl. ¶¶ 42–51);

- *Count II*: Sex discrimination and sex harassment in violation of Title VII, *id.* at 14–17 (Am. Compl. ¶¶ 52–61);

- *Count III*: Retaliation and retaliatory hostile work environment in violation of Title VII, *id.* at 17–21 (Am. Compl. ¶¶ 62–71); and

- *Count IV*: Violations under the Kansas Age Discrimination in Employment Act (KADEA), *id.* at 21–25 (Am. Compl. ¶¶ 72–82).

The court explains the governing standard, next.

## II.      Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

6

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

This Order addresses the gist of the pending motion in the following order: *First*, the court addresses the threshold issue whether it may consider events more than 300 days before plaintiff filed her EEOC charge. *Second*, the court addresses defendant's arguments against plaintiff's Title VII claims, followed by her state law claim. *Finally*, the court denies plaintiff's request for leave to amend her pleading.

### A.    EEOC Charge

At the outset, defendant argues that plaintiff's Amended Complaint alleges events that occurred more than 300 days before plaintiff's first EEOC charge. Doc. 25 at 2. And so, defendant contends, the court can't consider those events. *Id.* Plaintiff disagrees. Doc. 35 at 6–10. She argues that because she has pleaded hostile work environment claims—which allege continuing violations—the court properly may consider events that occurred more than 300 days before she filed her EEOC charge. *Id.* The court agrees with plaintiff.

"Under Title VII, a plaintiff must file a timely charge with the EEOC or a state agency before filing suit." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir. 2016). In states that have prohibited discrimination under 42 U.S.C. § 2000e-5, "the charge must be filed within 300 days 'after the alleged unlawful employment practice occurred[.]'" *Id.* (quoting 42 U.S.C. § 2000e-5(e)(1)). Kansas has prohibited discrimination under § 2000e-5, *see* Kan. Stat. Ann. § 44-1001, so the 300-day clock applies to plaintiff's action. *See Hansen*, 844 F.3d at 922. Ordinarily, applying this "limitations period is straightforward: 'A discrete retaliatory or discriminatory act occurred on the day that it happened.'" *Id.* at 923 (quotation cleaned up) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "But hostile work environment claims are different." *Id.* "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Consequently, it "does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

Our Circuit has identified several factors courts use to decide whether offending acts "were part of the same actionable hostile work environment practice[.]" *Hansen*, 844 F.3d at 923. These non-exhaustive factors include "whether the pre- and post-limitations period acts were related by type, frequency, and perpetrator" and whether the acts occurred in the same location. *Id.* (internal quotation marks and citations omitted). On the other hand, where there's "no relation between the pre- and post-limitations acts," an employer won't incur liability. *Id.* (internal quotation marks and citations omitted).

Here, plaintiff filed her first EEOC charge on May 5, 2022. Doc. 22 at 2 (Am. Compl. ¶ 5). So, July 9, 2021—300 days earlier—is the start of the limitations period. Here are the allegations in the Amended Complaint occurring before July 9, 2021:

- the incident where Shierfereke told another employee to display a book about Elvis's death to plaintiff, *id.* at 4 (Am. Compl. ¶ 12);

- the incident where Shierfereke left a DVD with sexual scenes on plaintiff's desk, *id.* at 5 (Am. Compl. ¶ 16);

- the incident where Shierfereke yelled at plaintiff, *id.* at 5–6 (Am. Compl. ¶ 17);

- other employees ignoring plaintiff and plaintiff experiencing so much stress at work that she vomited and eventually shaved her head due to hair loss, *id.* at 6 (Am. Compl. ¶¶ 18–19).

These events relate to the rest of plaintiff's allegations about a hostile work environment. They mostly involve a recurring actor, Shierfereke, they occurred in the same location, and they are the same type of harassment. *See Hansen*, 844 F.3d at 923. So, the court concludes, it properly may consider all of the allegations in plaintiff's Amended Complaint—including those events which occurred more than 300 days before plaintiff filed her first EEOC charge—to determine whether plaintiff has pleaded a plausible hostile work environment claim.

### B.    Title VII Race Discrimination

Plaintiff alleges that defendant discriminated against her on the basis of her race, ancestry, and color. Doc. 22 at 10–14 (Am. Compl. ¶¶ 42–51). She offers two theories of discrimination: disparate treatment and hostile work environment. The court evaluates defendant's challenges to her disparate treatment claim, first.

#### 1.    Disparate Treatment

"Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Khalik*

*v. United Air Lines*, 671 F. 3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)).

A Title VII plaintiff may use direct evidence or indirect evidence, or both, to support her claims.

*Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).  A Title VII claim survives a Rule

12(b)(6) motion to dismiss if the plaintiff "has 'sufficiently stated . . . claims for relief' by

plausibly alleging either direct evidence of discrimination or a prima facie discrimination claim."

*McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137–38 (10th Cir. 2024) (quoting *Khalik*,

671 F.3d at 1193).  To be sure, a plaintiff needn't "'*establish* a prima facie case in her

complaint'" under the 12(b)(6) standard.  *Id.* at 1139 (emphasis in original) (quoting *Khalik*, 671

F.3d at 1192).  Still, to "evaluate whether a complaint survives a motion to dismiss," the court

considers "whether a plaintiff has 'set forth a plausible claim in light of the elements of [her]

claim.'"  *Id.* (alteration in original) (quoting *Frappied v. Affinity Gaming Black Hawk, LLC*, 966

F.3d 1038, 1050 (10th Cir. 2020)).

  "'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated

that the adverse employment action occurred under circumstances which give rise to an inference

of unlawful discrimination.'"  *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)

(quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).  Ordinarily, "a Title VII

plaintiff bringing a claim of employment discrimination must plausibly allege these elements:

(1) 'she is a member of a protected class,' (2) 'she suffered an adverse employment action,' and

(3) 'the challenged action occurred under circumstances giving rise to an inference of

discrimination.'"  *McNellis*, 116 F.4th at 1139 (quoting *Bennett v. Windstream Commc'ns, Inc.*,

792 F.3d 1261, 1266 n.1 (10th Cir. 2015)).  Defendant doesn't contest that plaintiff is a member

of a protected class.  *See generally* Doc. 25; *see also* Doc. 22 at 2 (Am. Compl. ¶ 3) (alleging

that plaintiff "is a Black, African American female").  Nor does defendant challenge that plaintiff

suffered an adverse employment decision.  After all, defendant fired her.  Doc. 22 at 10 (Am.

Compl. ¶ 39); *see also Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of*

*Regents*, 125 F.4th 1321, 1336 (10th Cir. 2025) ("[S]he suffered an adverse employment action

because she was fired.").

　　　　Instead, defendant's motion attacks only one element—the third.  Doc. 25 at 4–5.

Defendant argues that plaintiff hasn't alleged that defendant treated similarly situated employees

differently.  *Id.*  The court finds defendant's argument unpersuasive.  *First*, in fact plaintiff has

alleged plausibly that defendant treated plaintiff differently than similarly situated employees.

And *second*, plaintiff has alleged another plausible basis for inferring discrimination:

Defendant's treatment of plaintiff violated defendant's internal policies.

### a.　　　Similarly Situated Employees

　　　　Start with similarly situated employees.  "Alleging 'the employer treated similarly

situated employees more favorably' is '[o]ne method by which' a plaintiff can plead

circumstances that give rise to an inference of discrimination."  *McNellis*, 116 F.4th at 1141

(alteration in original) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800–01 (10th Cir. 2007)).

Whether employees are similarly situated turns on whether the individuals "'deal with the same

supervisor, are subjected to the same standards governing performance evaluation and discipline,

and have engaged in conduct of comparable seriousness.'"  *Id.* at 1139 n.13 (internal quotation

marks omitted) (quoting *PVNF*, 487 F.3d at 800–01).  Here, plaintiff's pleading identifies two of

her colleagues who were younger than her and white.  Doc. 22 at 4–5 (Am. Compl. ¶ 14).  And

plaintiff alleges that she is the only employee with prior work experience who defendant ever

had placed on a retraining program.  *Id.* at 8 (Am. Compl. ¶ 31).  Plaintiff alleges that defendant

required her to complete the retraining program because "there was no record of her original

training[.]"  *Id.* at 7 (Am. Compl. ¶ 29).

Defendant responds with two arguments of its own. *One*, defendant asserts, plaintiff's allegations about similarly situated employees are conclusory. Doc. 25 at 4. And *two*, plaintiff's allegations fail to allege that the other employees were materially similar. *Id.* at 5. The court disagrees with both of defendant's arguments.

To be sure, a "plaintiff's assertion that she is 'similarly situated' to other employees is 'just a legal conclusion—and a legal conclusion is never enough.'" *Bekkem*, 915 F.3d at 1275 (quoting *Hwang v. Kan. State. Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014)). "While plaintiffs don't have to incant any particular litany of facts to support a claim of differential treatment, they *do* have to allege some set of facts that taken together plausibly suggest differential treatment of similarly situated employees." *Hwang*, 753 F.3d at 1164 (emphasis in original). Here, many of plaintiff's allegations are mere legal conclusions, which the court disregards. For instance, in each of plaintiff's counts, she includes nearly identical allegations that defendant treated her differently than similarly situated colleagues. *E.g.*, Doc. 22 at 11–13 (Am. Compl. ¶ 48); *id.* at 15–16 (Am. Compl. ¶ 58); *id.* at 18–20 (Am. Compl. ¶ 67); *id.* at 22–24 (Am. Compl. ¶ 79). But clothed with no factual detail—and none are—these allegations fail to move the needle.

But plaintiff's allegations about her two younger, white colleagues come with sufficient detail to make plaintiff's claim plausible. Plaintiff alleges that these two employees were working in the same laboratory setting as plaintiff. *Id.* at 4–5 (Am. Compl. ¶ 14). And she alleges their names, their races, their approximate ages, and how defendant treated them differently. *See id.* Taken together and viewed in the light most favorable to plaintiff, those allegations support a plausible inference that defendant treated plaintiff differently than her colleagues because of her race. The court thus rejects defendant's position that plaintiff's allegations are too conclusory to satisfy her pleading burden.

Defendant argues alternatively that the other employees weren't similarly situated. Doc. 25 at 4–5. To support this argument, defendant contends that plaintiff doesn't allege "that anyone else was similarly situated in that the record of their original training could not be found." *Id.* at 5. The court isn't persuaded. It's true that plaintiff doesn't allege defendant told any other employee that their training records were lost. *See generally* Doc. 22. But plaintiff possessed copies of those records, and defendant allegedly refused to review them. *Id.* at 8 (Am. Compl. ¶ 33). So, according to plaintiff's allegations, even though no party disputed that plaintiff had completed the original training, *id.* at 7 (Am. Compl. ¶ 29), and even though plaintiff had documentation about the original training, *id.* at 8 (Am. Compl. ¶ 33), defendant still required plaintiff to complete a retraining program. Then, defendant fired plaintiff for failing to complete that retraining program fast enough. *Id.* at 10 (Am. Compl. ¶ 39). The totality of this explanation is "so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination" or retaliation. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

In short, plaintiff alleges plausibly that defendant treated her differently than other similarly situated employees. So, the court declines to dismiss plaintiff's Title VII race-discrimination claim premised on disparate treatment.

The court could reach the same conclusion based on defendant violating its internal policy, which the court explains next.

### b.    Violating Internal Policy

Plaintiff alleges a separate factual basis as reason to infer discrimination. Namely, plaintiff alleges that defendant's requirement for plaintiff to complete a retraining program violated defendant's internal policy. *E.g.*, Doc. 22 at 8 (Am. Compl. ¶ 31).

13

A plaintiff properly can use evidence that the employer's proffered explanation was pretextual to raise an inference of discrimination. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) (explaining that "there is no proscription in an appropriate case against using pretext evidence to support a prima facie case if it indeed gives rise to an inference of actionable discriminatory intent"); *see also Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir. 1995) ("[A] showing of pretext is evidence which allows a jury to infer discriminatory intent." (emphasis omitted)). And one way that plaintiff can show pretext is by adducing "'evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances.'" *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

Here, plaintiff alleges that defendant had followed a policy that "scientists with prior experience will have a training program written for them that is approved by the supervisor" and that only after failing that personalized training plan would defendant require an experienced scientist to complete a retraining program. Doc. 22 at 8 (Am. Compl. ¶ 31). Violating this written policy, defendant allegedly placed plaintiff on a retraining program for "new Forensic Scientists with no work experience." *Id.* at 7 (Am. Compl. ¶ 29). This deviation from internal policy—viewed in the light most favorable to plaintiff and coupled with defendant's refusal to consider plaintiff's records of her original training—plausibly suggests that defendant acted with a retaliatory or discriminatory motive. In this sense, it furnishes an alternative basis for the court to conclude that defendant's disparate treatment claim is plausible.

c.      **Disparate Treatment – Conclusion**

Here's the long and short of it: Plaintiff has alleged that defendant—violating an internal handbook—singled her out for additional training because it couldn't locate a record of

plaintiff's original training.  When plaintiff offered to show defendant records of her training, defendant refused to review them and, instead, required plaintiff to go forward with the retraining program.  And then, when plaintiff couldn't complete the retraining quickly enough, defendant fired her.  Taking those allegations as true, a jury reasonably could find or infer that defendant harbored a discriminatory animus.  The court thus declines to dismiss plaintiff's disparate treatment claim predicated on race discrimination.

The court addresses defendant's challenges to plaintiff's hostile work environment claim, next.

## 2.  Hostile Work Environment

"'Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII.'" *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1249 (10th Cir. 2024) (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008)).  An employer thus violates Title VII when it maintains a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "To state a racially hostile work environment claim under Title VII, a plaintiff must allege: (1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment."  *Young*, 94 F.4th at 1249.

Defendant offers two arguments against plaintiff's hostile-work-environment claim. *First*, defendant contends that it isn't liable for actions performed by plaintiff's coworkers.  Doc. 25 at 6–7.  And *second*, defendant argues that plaintiff hasn't alleged a hostile work environment

15

to a sufficiently severe degree to recover. *Id.* at 6. The court agrees on both points and dismisses plaintiff's hostile work environment claim.

### a. Liability for Coworker Harassment

Begin with the liability argument. The Supreme Court has held that "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998)). Alternatively, "an employer may be *vicariously* liable for its employees' creation of a hostile work environment" "where the harassing employee is the plaintiff's 'supervisor.'" *Id.* (emphasis in original). This principle, defendant argues, requires dismissal of plaintiff's hostile-work-environment claim because Schiefereke—the primary harasser in plaintiff's pleading—wasn't plaintiff's supervisor. *See* Doc. 25 at 6–7. Plaintiff wholly fails to respond to this argument. *See* Doc. 35 at 14–17. That failure is problematic because it's plaintiff's burden "to frame a 'complaint with enough factual matter (taken as true) to suggest' that . . . she is entitled to relief." *McNellis*, 116 F.4th at 1143 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

Ultimately, the court sides with defendant, but only in part. The court explains its reasoning in two steps: *First*, the Amended Complaint doesn't allege plausibly that Schiefereke was plaintiff's supervisor. This conclusion means that defendant isn't directly liable for Schiefereke's conduct. And *second*, the Amended Complaint doesn't allege plausibly that defendant acted negligently in response to Schiefereke's conduct until plaintiff first complained about it. Take those points sequentially.

*First*, Schiefereke wasn't plaintiff's supervisor. An employee is a "'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 450; *see id.* at 429

16

(suggesting that "tangible employment actions" include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (internal quotation marks and citation omitted)). Here, the Amended Complaint omits any allegation that could support an inference that Schiefereke was plaintiff's supervisor. At best, the Amended Complaint says that it was Schiefereke's job "to maintain all Chemistry Department instruments[.]" Doc. 22 at 6 (Am. Compl. ¶ 17). But that alleged fact is a far cry from alleging that Schiefereke held supervisory power over plaintiff. Because the Amended Complaint fails to allege that Schiefereke was plaintiff's supervisor, defendant is liable for Schiefereke's harassing conduct only if it acted negligently. *See Vance*, 570 U.S. at 427.

*Second*, for most of the incidents that comprise plaintiff's hostile work environment claim, plaintiff has failed to allege that defendant acted negligently. *See Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1342 (10th Cir. 1998) (explaining that an employer's hostile-work-environment "liability attaches when a plaintiff establishes that [the] employer had actual or constructive notice of the hostile work environment and failed to respond adequately"). Plaintiff never alleges that defendant knew or should have known about Schiefereke's harassing conduct until plaintiff first reported him to the assistant lab director in early May 2021 for leaving the DVD video with sexual scenes on her desk. *See* Doc. 22 at 5 (Am. Compl. ¶ 16).[2] And more, plaintiff never alleges that the DVD video incident had anything to do with plaintiff's race or that defendant was on notice of Schiefereke's *discriminatory* harassing conduct. *See id.* Still, viewing the allegations in the light most favorable to plaintiff, the court assumes for purposes of

---

[2] According to the Amended Complaint, early May 2021 is the first time when plaintiff complained to defendant about Schiefereke's conduct. *See* Doc. 22 at 5 (Am. Compl. ¶ 16). Although the Elvis-book incident happened in December 2019, plaintiff doesn't allege that she complained of that occurrence until November 2021. *Id.* at 4 (Am. Compl. ¶ 12).

17

deciding this motion that defendant had notice of Schiefereke's harassing conduct in early May 2021, when plaintiff first complained to defendant about Schiefereke. That assumption leaves the following incidents for which defendant could face liability[3]:

- Schiefereke yelled at plaintiff and told her that he would use whatever instrument whenever he wants and that if plaintiff ever asked him to get off an instrument, he would never help her with repairs, *id.* at 5–6 (Am. Compl. ¶ 17);

- Schiefereke and two other coworkers completely ignored plaintiff, *id.* at 6 (Am. Compl. ¶ 18);

- Schiefereke said (and repeated) that "the Chinese Wuhan Lab was making a Negro Virus," *id.* (Am. Compl. ¶ 24).

As the court explains next, even when added together, these events fail to supply the "high bar" necessary for a cognizable hostile-work-environment claim. *Iweha v. State of Kansas*, 121 F.4th 1208, 1223 (10th Cir. 2024).

### b.    Sufficiently Severe or Pervasive

Our Circuit recently has emphasized the "high bar" necessary to recover under a hostile-work-environment claim. *Id.* "Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021). To make the severity or pervasiveness determination, a

---

[3]    In her Response brief, plaintiff copy-and-pasted the entirety of paragraphs 46 through 48 from her Amended Complaint. Doc. 35 at 15–17. Paragraph 48 of the Amended Complaint lists a series of allegations about how plaintiff was treated differently than similarly situated employees. Doc. 22 at 11–13 (Am. Compl. ¶ 48). For instance, plaintiff alleges that defendant altered her training, denied her an opportunity to apply for another position, placed her on quotas, didn't allow her to work from home, and refused to take complaints from her. *See id.* Plaintiff doesn't explain how any of these actions contributed to a hostile work environment. *See* Doc. 35 at 15–17. And indeed, these discrete actions may serve as fuel for plaintiff's disparate treatment claim but not her hostile work environment claim. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024) ("[W]e have consistently held that allegations of discrete acts may be alleged as separate claims, and as such cannot properly be characterized as part of a continuing hostile work environment." (internal quotation marks and citation omitted)). The court thus concludes that plaintiff's allegations of discrete harm from defendant's discrete employment decisions furnish ammunition for plaintiff's disparate treatment claim, not her hostile-work-environment claim. In any event, plaintiff has failed to carry her burden to show she is entitled to relief on her hostile-work-environment claim.

court must evaluate the totality of the circumstances. *Id.* The court must "'consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012)). A plaintiff doesn't demonstrate a sufficiently pervasive or severe hostile work environment with "a few isolated incidents" unless those "isolated incidents are in themselves 'severe.'" *Morris*, 666 F.3d at 666.

Determining whether the workplace is an objectively hostile work environment is not "a mathematically precise test." *Harris*, 510 U.S. at 22. This means the court must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. But, when judging hostility, the court must ensure that it does not turn Title VII into a "general civility code." *Faragher*, 524 U.S. at 788 (internal quotations omitted); *see also id.* ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment[.]"). Conduct "that is merely offensive" doesn't violate Title VII. *Harris*, 510 U.S. at 21. Instead, Title VII only prohibits conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive[.]" *Id.*

Plaintiff here seems to base her hostile-work-environment claim on these actions:

- Schiefereke yelled at plaintiff and told her that he would use whatever instrument whenever he wants and that if plaintiff ever asked him to get off an instrument, he would never help her with repairs, Doc. 22 at 5–6 (Am. Compl. ¶ 17);

- Schiefereke and two other coworkers completely ignored plaintiff, *id.* at 6 (Am. Compl. ¶ 18);

- Schiefereke said (and repeated) that "the Chinese Wuhan Lab was making a Negro Virus," *id.* (Am. Compl. ¶ 24).

Viewed collectively, these allegations fail the pervasive-or-severe test.  No doubt, some of these alleged interactions are "troubling[.]"  *Iweha*, 121 F.4th at 1223.  But they don't amount to the sort of "outrageous conduct" necessary to alter the terms and conditions of plaintiff's employment.  *Id.*  The incidents plaintiff alleges weren't pervasive.  *See id.* ("[A] plaintiff ordinarily must show more than a few isolated incidents of enmity[.]" (quotation cleaned up)).  Nor were they severe.  *See Frank v. Heartland Rehab. Hosp., LLC*, 2022 WL 486793, at *3 (D. Kan. Feb. 16, 2022) (explaining that conduct that isn't tortious, physically threatening or humiliating, and doesn't involve physical contact usually isn't severe), *aff'd*, 2023 WL 4444655 (10th Cir. July 11, 2023).  What's more, plaintiff never explains how any of these interactions were pervasive or severe or altered the terms and conditions of her employment.  *See generally* Doc. 35.

A review of some of our Circuit's cases confirms that plaintiff's allegations are woefully insufficient to state a hostile-work-environment claim.  *E.g.*, *Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522–23 (10th Cir. 2017) (affirming grant of motion to dismiss because "silent treatment" from coworkers and three racist comments from supervisor didn't "rise to the level necessary to state a hostile work environment claim under Title VII"); *Iweha*, 121 F.4th at 1223–25 (affirming grant of summary judgment because exclusion from projects, derogatory questions and comments about plaintiff's country of origin and hygiene, and disparaging comments about Martin Luther King, Jr. holiday weren't severe or pervasive); *Morris*, 666 F.3d at 665–69 (affirming grant of summary judgment because doctor flicking plaintiff on the head, throwing bloody heart tissue, and yelling at plaintiff weren't severe or pervasive).  In short,

20

plaintiff has failed to state a plausible claim based on a hostile work environment, so the court dismisses it.

The court tackles defendant's arguments about plaintiff's sex-discrimination claim, next.

### C.    Title VII Sex Discrimination

In addition to her claims based on race, ancestry, and color discrimination, plaintiff also alleges that defendant discriminated against her based on her sex. Doc. 22 at 14–17 (Am. Compl. ¶¶ 52–61). And again, plaintiff alleges that defendant subjected her to both disparate treatment and a hostile work environment. The parties agree that the same standards governing plaintiff's race-discrimination claim govern her sex-discrimination claim. Doc. 25 at 7–8; Doc. 35 at 17, 20–21; *see also Alatorre v. Ole Mexican Foods, Inc.*, No. CIV-21-01057-JD, 2023 WL 7308117, at *4 (W.D. Okla. Nov. 6, 2023) ("The elements for sex discrimination are the same as race discrimination").

### a.  Disparate Treatment

Defendant argues that plaintiff hasn't pleaded any facts to support her Title VII sex discrimination claim. Doc. 25 at 8. Defendant asserts that plaintiff's allegations of similarly situated employees are conclusory and that she hasn't alleged any other basis to infer discrimination on the basis of sex. *Id.*

The court agrees that many of plaintiff's allegations are conclusory. As discussed above, plaintiff's cursory allegations about her "similarly situated male colleagues" are legal conclusions, which the court won't accept as true. Doc. 22 at 15–16 (Am. Compl. ¶ 58). So, too, are plaintiff's allegations that she suffered adverse employment actions "[b]ecause of her sex[.]" *Id.*; *id.* at 16 (Am. Compl. ¶ 58.N.). So, the court disregards those assertions.

Still, plaintiff has alleged some facts that make her sex-discrimination claim plausible. The court reaches this conclusion for two reasons. *First*, as explained above, plaintiff has

alleged plausibly that the explanation that defendant gave for assigning plaintiff additional training was pretextual.  Specifically, defendant's deviation from internal policy raises a plausible inference that defendant's proffered explanation for assigning plaintiff training—that it lost the record of plaintiff's original training—was a guise.  And a reasonable jury could view that pretextual explanation as circumstantial evidence of discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

*Second*, while plaintiff has failed to plead specific facts suggesting defendant has treated a similarly situated male employee different, she has alleged that she is the first person who ever "entered the KBI Chemistry Lab with prior experience" to whom defendant assigned retraining.  Doc. 22 at 8 (Am. Compl. ¶ 31).  Viewed in the light most favorable to plaintiff, singling out plaintiff for special treatment could raise an inference of discrimination.  *See Bush v. Lumileds, LLC*, No. 16-cv-11761, 2018 WL 4610867 (E.D. Mich. Sept. 26, 2018) ("Singling out suggests discrimination at least as much as it suggests retaliation.").

These two points nudge plaintiff's sex-discrimination claim based on disparate treatment into the plausibility zone.  The court can't say whether any alleged discrimination was based on plaintiff's race, sex, or some combination of them.  *See Frappied*, 966 F.3d at 1045 ("Title VII also prohibits discrimination based on a combination of protected characteristics, such as 'sex-plus-race' discrimination, i.e., discrimination targeted only at employees of a particular race and sex.").  The court thus declines to dismiss this claim.

### b.    Hostile Work Environment

Plaintiff's hostile-work-environment claim based on sex discrimination fails for the same reason as her hostile-work-environment based on race.  Namely, plaintiff hasn't alleged the sort

of "extreme conduct" necessary to alter a term or condition of her employment. *Faragher*, 524 U.S. at 788. The court thus dismisses plaintiff's hostile-work-environment claim based on sex discrimination.

The court evaluates defendant's arguments about plaintiff's retaliation claim, next.

### D.    Title VII Retaliation

Plaintiff's third claim alleges Title VII retaliation and retaliatory harassment. Doc. 22 at 17–21 (Am. Compl. ¶¶ 62–71).

#### a.  Disparate Treatment

To make out a prima facie case for a Title VII retaliation claim, plaintiff "must show . . . '(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). As with her Title VII discrimination claim, plaintiff "is not required to set forth a prima facie case for each element, [but] she is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193.

Defendant offers two arguments against plaintiff's retaliation claim. *First*, defendant argues, plaintiff didn't suffer a materially adverse employment action. Doc. 25 at 11–14. And *second*, because defendant didn't fire plaintiff for over six months after she filed an EEOC complaint, plaintiff has failed to allege a plausible causal connection between plaintiff's protected activity and any adverse employment action. Doc. 25 at 14. The court disagrees on both points.

*First*, plaintiff plainly pleaded an adverse employment action. "[A]n action is 'materially adverse' if it is sufficiently severe or pervasive that it could well dissuade a reasonable worker

from engaging in protected activity." *Kincaid v. Unified Sch. Dist. No. 500*, 645 F. Supp. 3d 1134, 1162 (D. Kan. 2022) (quotation cleaned up), *aff'd*, 94 F.4th 936 (10th Cir. 2024). The court agrees with defendant that many of plaintiff's allegations don't amount to materially adverse employment actions. Plaintiff doesn't respond to these arguments. She merely copies-and-pastes the Amended Complaint into her Response brief. The court thus dismisses the following allegations that plaintiff identifies as materially adverse:

- Plaintiff's coworker yelling at her. *See McCants v. Correct Care Sols., LLC*, No. 16-2787-DDC, 2018 WL 2445157, at *8 (D. Kan. May 31, 2018) (holding that supervisor verbally reprimanding and yelling at employee didn't amount to materially adverse employment action).

- Plaintiff's coworkers giving her the silent treatment. *See Johnson v. Weld County*, 594 F.3d 1202, 1216 (10th Cir. 2010) (holding that "cold shoulder" treatment wasn't a materially adverse employment action).

- Defendant's refusal to accept a complaint from plaintiff. *Cf. Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 640 (10th Cir. 2012) (explaining that "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off"), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

- Defendant's denial of plaintiff's request for additional training and to attend conferences. *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 39 (D.D.C. 2019) (concluding no material adversity resulted from denial of training requests); *Befort v. Kan. Dep't of Com.*, No. 08-2598-KHV, 2009 WL 10707844, at *16 (D. Kan. Dec. 17, 2009) (concluding that denial of plaintiff's request to attend out-of-state conference wasn't materially adverse).

- Defendant recording plaintiff's evaluation.[4] *See Lewis v. Wilkie*, 909 F.3d 858, 869 (7th Cir. 2018) (concluding that employer directing other coworkers to monitor employee wasn't materially adverse).

Still, despite plaintiff's nearly nonexistent briefing in response to this, the court can't ignore the obvious: defendant fired plaintiff. And termination qualifies as a materially adverse employment action. *Walkingstick Dixon*, 125 F.4th at 1339. Indeed, if it didn't, what could?

---

[4]    Plaintiff alleges that defendant covertly recorded her performance evaluation at the end of 2021, a year before defendant terminated her. Doc. 22 at 9–10 (Am. Compl. ¶ 38).

The court also rejects defendant's argument that requiring plaintiff to receive remedial training wasn't materially adverse. It does so because plaintiff has alleged a plausible and direct connection between that remedial training and plaintiff's termination. In short, although plaintiff effectively has conceded that many of defendant's actions weren't materially adverse, the court can't dismiss her retaliation claim on that basis because she suffered the ultimate adverse employment action—termination.

*Second*, plaintiff has raised an inference of discrimination. Defendant primarily argues that any adverse employment action happened too long after any protected activity. Here's the alleged timeline of key events:

- May 5, 2022: Plaintiff filed her initial EEOC complaint. Doc. 22 at 2 (Am. Compl. ¶ 5).

- July 28, 2022: Defendant placed plaintiff on the retraining program. *Id.* at 8 (Am. Compl. ¶ 31).

- December 5, 2022: Defendant fired plaintiff. *Id.* at 10 (Am. Compl. ¶ 39).

"'A retaliatory motive may be inferred when an adverse action closely follows protected activity.'" *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Our Circuit has "'held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation'" but "'a three-month period, standing alone, is insufficient.'" *Walkingstick Dixon*, 125 F.4th at 1339 (quoting *Anderson*, 181 F.3d at 1179). Importantly, however, "the passage of time does not necessarily bar a plaintiff's retaliation claim if *additional* evidence establishes the retaliatory motive." *Piercy*, 480 F.3d at 1198–99 (emphasis in original).

Here, plaintiff argues that "the timing, violations of policy, and disparate treatment" all support a causal connection between her protected activity and defendant's alleged retaliation. Doc. 35 at 26. The court isn't persuaded by the timing argument. Just less than three months

passed between plaintiff filing her EEOC complaint and defendant placing plaintiff on the retraining program. That span of time, on its own, doesn't support an inference of causality. *See Walkingstick Dixon*, 124 F.4th at 1339. But, as discussed above, defendant's failure to follow its own policy in imposing training requirements on plaintiff does suggest that discriminatory animus was afoot. *See above* § III.B.1.b; *see also Doebele v. Spring/United Mgmt. Co.*, 342 F.3d 1117, 1138 n.11 (10th Cir. 2003) (explaining that "deviations from normal company procedure" supported plaintiff's assertion of pretext for retaliation claim (quotation cleaned up)). Defendant never responds to this argument. *See generally* Doc. 25; Doc. 36. At this stage, the court can't say whether defendant's alleged animus resulted from race discrimination, sex discrimination, unlawful retaliation, some combination of these, or some lawful reason. But defendant's violation of its internal policy raises an inference of discriminatory animus that suffices to survive this early stage of the litigation for plaintiff's claim to survive.

**b.    Retaliatory Harassment**

"[C]o-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998). "[T]he traditional hostile-work-environment concepts of 'severe' or 'pervasive' still apply in a retaliatory-harassment claim." *Bermudez v. City of Topeka*, No. 18-cv-4141-HLT-ADM, 2020 WL 206766, at *6 (D. Kan. Jan. 14, 2020) (citation omitted). So, for the same reasons that plaintiff's hostile-work-environment claims fail—namely, plaintiff hasn't alleged harassment that was either sufficiently pervasive or sufficiently severe—plaintiff's retaliatory harassment claim likewise fails. The court thus dismisses plaintiff's retaliatory harassment claim.

### E.    KADEA Claim

Defendant argues that the court should decline to exercise jurisdiction over plaintiff's state law claims if it dismisses plaintiff's federal claims.  Doc. 25 at 15.  Because some of plaintiff's federal claims survive, the court needn't reach defendant's argument.  Defendant hasn't offered any other basis for the court to decline to hear plaintiff's supplemental claim.  *See Mocek v. City of Albuquerque*, 813 F.3d 912, 935 (10th Cir. 2015) (explaining that district courts "may decline to hear a supplemental claim in enumerated circumstances"); 28 U.S.C. § 1367(c) (enumerating circumstances—none of which clearly applies here—where "district courts may decline to exercise supplemental jurisdiction").

Defendant alternatively argues that the court should dismiss plaintiff's state law claim because plaintiff "does not allege facts to plausibly support a claim for age discrimination or retaliation."  Doc. 25 at 15.  This argument is perfunctory.  So, the court declines to evaluate it. *E.g.*, *United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (explaining that litigants waive arguments "when they are inadequately presented" (quotation cleaned up)); *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("This briefing-waiver rule applies equally to arguments that are . . . presented only in a perfunctory manner." (quotation cleaned up)).

### F.    Plaintiff's Request for Leave to Amend

Plaintiff's Response brief requests leave to amend if the court dismisses her claims.  Doc. 35 at 29.  The court denies this passing request.  Our Circuit has explained that a "district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quotation cleaned up) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)).  That's so because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice

of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014). Consistent with this guidance from the Circuit, our court routinely denies such passing requests for leave to amend. *E.g.*, *Cortishae-Eier v. Ford Motor Co.*, No. 23-3081-EFM-TJJ, 2023 WL 5625311, at *5 (D. Kan. Aug. 31, 2023); *Eravi v. City of Lawrence*, No. 23-CV-4109-JAR-GEB, 2024 WL 3360447, at *5–6 (D. Kan. July 9, 2024); *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, No. 19-CV-4007-HLT-TJJ, 2021 WL 1238254, at *6 (D. Kan. Apr. 2, 2021); *Vestring v. Halla*, 920 F. Supp. 2d 1189, 1193 (D. Kan. 2013). Plaintiff must comply with D. Kan. Rule 15.1 if she wishes to amend her operative pleading. *Eravi*, 2024 WL 3360447, at *5.

## IV.    Conclusion

Plaintiff's disparate-treatment claims are viable, but her hostile-work-environment claims are not. The court thus dismisses plaintiff's claims premised on a hostile work environment, including her retaliatory harassment claim. Her other claims survive.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 25) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 26th day of March 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**